Thomas A. Saenz (SBN 159430)
Luis L. Lozada (SBN 344357)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Sprint Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
          llozada@maldef.org

*Attorneys for Plaintiff Mariela Aguilar
Velazquez and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIELA AGUILAR VELAZQUEZ, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> ALLY BANK, <br><br> Defendant. | Case No. 2:21-cv-02375-MCE-DB <br><br> **NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL** <br><br> Motion Date: April 20, 2023 <br><br> The Honorable Morrison C. England, Jr. |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on April 20, 2023, or at such other date as may be agreed upon or ordered, in Courtroom 7 of the United States District Court for the Eastern District of California, located at 501 I Street, Sacramento, California 95814, Plaintiff Mariela Aguilar Velazquez, individually, and as class representative on behalf of the proposed classes (together, "Plaintiffs"), will, and hereby does move this Court for the following relief with respect to the Settlement Agreement and Release (attached as Exhibit A to the Declaration of Thomas A. Saenz in Support of Motion for Preliminary Settlement Approval Order ("Saenz Decl.")) with Defendant Ally Bank ("Ally"):

1. That the Court certify, for settlement purposes only, a settlement class pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

2. That the Court preliminarily approve the proposed Settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23;

3. That the Court appoint Plaintiff Mariela Aguilar Velazquez as representative of the class;

4. That the Court approve Plaintiffs' attorneys as Class Counsel;

5. That the Court approve mailing to the Class Members the proposed Class Notice and the establishment of a settlement website;

6. That the Court appoint Angieon Group as the Settlement Administrator; and

7. That the Court schedule a hearing for final approval of the Settlement at least one hundred fifty (150) days after entry of the Preliminary Approval Order.

This Motion is made on the grounds that the Settlement is the product of arms'-length, good-faith negotiations; is fair, reasonable, and adequate to the Class, and should be preliminarily approved, as described in the accompanying memorandum of points and authorities in support of Plaintiffs' unopposed motion for preliminary settlement approval.

This Motion is based on this notice, the accompanying memorandum of points and authorities in support of Plaintiffs' unopposed motion for preliminary settlement approval, the Saenz Declaration (which attaches a copy of the Settlement), the Court's record of this action, all matters of which the Court may take notice, and oral and documentary evidence presented at the hearing on the motion. This motion is unopposed by Ally.

Dated: March 13, 2023

Respectfully submitted,

/s/ *Thomas A. Saenz*
Thomas A. Saenz (SBN159430)
Luis L. Lozada (SBN 344357)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone:     (213) 629-2512
Facsimile:     (213)629-0266
Email: tsaenz@maldef.org
            llozada@maldef.org

*Attorneys for Plaintiff Mariela Aguilar
Velazquez and the Proposed Classes*

# **TABLE OF CONTENTS**

Page

**INTRODUCTION** ..................................................................................................1

**BACKGROUND** ..................................................................................................2

A.     **Ally's Policy of Requiring Proof of U.S. Permanent Residence to Access Deposit Accounts** ............................................................................2

B.     **Procedural History** ...........................................................................3

C.     **The Proposed Settlement** ...................................................................3

      1.     The Settlement Classes ......................................................3

      2.     Comparison of the Settlement Classes with the Complaint ...........4

      3.     Overview of the Settlement ................................................5

            a.     Programmatic Relief ..............................................5
            b.     Monetary Relief ....................................................6
            c.     Incentive Awards ..................................................8
            d.     Attorneys' Fees and Costs .......................................8
            e.     Settlement Administration .......................................8
            f.     Cy Pres ..............................................................9

**ARGUMENT** .....................................................................................................10

A.     **The Court Should Grant Preliminary Settlement Approval** ...............10

      1.     Certification is Proper Under Fed. R. Civ. P. 23 ......................10

            a.     Fed. R. Civ. P. 23(a) is Satisfied ...............................10
            b.     Certification is Proper Under Fed. R. Civ. P. 23(b)(3) ......12
            c.     Plaintiffs' Counsel Should Be Appointed Class Counsel ....13

B.     **The Settlement Is Fair, Reasonable, and Adequate** .........................13

      1.     There are Significant Hurdles to Any Recovery in this Case .........14

      2.     The Settlement Amount is Appropriate ..................................15

      3.     The Extent of Discovery Supports Settlement ..........................16

      4.     Counsel's Experience and Views Support Approval ...................16

      5.     The Parties Participated in Good Faith, Arms-Length Negotiations ....17

      6.     The Proposed Notice is Clear and Adequate ...........................17

**THE COURT SHOULD SCHEDULE THE FINAL APPROVAL HEARING** ..................18

**CONCLUSION** ..................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc.* v. *Windsor*,
   521 U.S. 591 (1997) ...................................................................................................12

*Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ...................................................................................................11

*Brewer* v. *Salyer*,
   2017 WL 2813178 (E.D. Cal. June 29, 2017) ...........................................................9

*Brooks* v. *Pressed Juicery, Inc.*,
   336 F.R.D. 484 (E.D. Cal. 2020) .........................................................................10, 11

*Contreras* v. *Worldwide Flight Servs.*,
   2020 WL 2083017 (C.D. Cal. Apr. 1, 2020) .............................................................8

*Criswell* v. *Boudreaux*,
   2021 WL 5811887 (E.D. Cal. Dec. 7, 2021) .........................................................15, 16

*Donnenfeld* v. *Petro, Inc.*,
   No. 17 Civ. 2310 (E.D.N.Y. Mar. 5, 2020) ...............................................................7

*Evans* v. *Zions Bancorporation, N.A.*,
   2022 WL 16815301 (E.D. Cal. Nov. 8, 2022) ...........................................................8

*Hanlon* v. *Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................9, 12, 13

*Kutzman* v. *Derrel's Mini Storage, Inc.*,
   2020 WL 406768 (E.D. Cal. Jan. 24, 2020) .............................................................13

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ....................................................................................15

*Mitchinson* v. *Love's Travel Stops & Country Stores, Inc.*,
   2017 WL 2289342 ......................................................................................................14

*In re MyFord Touch Consumer Litig.*,
   No. 13 Civ. 3072 (N.D. Cal. Nov. 7, 2019) ...............................................................7

*Perez* v. *Wells Fargo*,
   No. 17 Civ. 454 (N.D. Cal. 2017) ..............................................................................7

*Reyes* v. *CVS Pharm., Inc.*,
   2016 WL 3549260 (E.D. Cal. June 29, 2016) .........................................................13

*Rivera* v. *Agreserves, Inc.*,
   2017 WL 445710 (E.D. Cal. Feb. 1, 2017)................................................8

*Rodriguez* v. *W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ......................................................13

*Romero* v. *Perryman* (*In re Easysaver Rewards Litig.*),
   906 F.3d 747 (9th Cir. 2018) ......................................................9

*Six (6) Mexican Workers* v. *Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) .....................................................9

*Stevens* v. *Harper*,
   213 F.R.D. 358 (E.D. Cal. 2002) ..................................................10

*Tierno* v. *Rite Aid Corp.*,
   2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) ........................................12

*Tyson Foods, Inc.* v. *Bouaphakeo*,
   577 U.S. 442 (2016) ...............................................................12

*Wal-Mart Stores, Inc.* v. *Dukes*,
   564 U.S. 338 (2011) ...............................................................10

*Whiteway* v. *FedEx Kinko's Office & Print Servs., Inc.*,
   2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) .......................................12

*Wright* v. *Linkus Ents., Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009) ..................................................10

**Statutes**

Civil Rights Act Section 1981, 42 U.S.C. § 1981 .............................. *passim*

Class Action Fairness Act, 28 U.S.C. § 1715 ......................................8

Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.* ....................... *passim*

**Other Authorities**

Illustrative Forms of Class Action Notices: Overview, Fed. Judicial Ctr.,
   https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-
   introduction (last visited February 13, 2023)....................................16

## INTRODUCTION

Plaintiff Mariela Aguilar Velazquez ("Agular") is a Deferred Action for Childhood Arrivals ("DACA") recipient who resides in the United States ("U.S.") and has a valid social security number ("SSN"). Plaintiff Roney Edler Barroso da Silva ("Barroso da Silva") is a K-1 visa recipient with a valid SSN who is married to a U.S. citizen and resides in the U.S. Plaintiffs Aguilar and Barroso da Silva each applied to open or be added to a checking and savings account from Ally Bank ("Ally"; together, with Aguilar and Barroso da Silva, the "Parties"), and allege that Ally denied their applications because they were not a U.S. citizen or Lawful Permanent Resident ("LPR").[1]

On December 20, 2021, Plaintiff Aguilar filed the complaint in this case against Ally, asserting on behalf of two putative classes claims of alienage discrimination under Section 1981 of the Civil Rights Act, 42 U.S.C. § 1981 ("Section 1981"), and immigration status discrimination under the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51 *et seq.*

After approximately a year of good-faith, arms-length settlement discussions among the Parties, the Parties have entered into a proposed settlement of this case for significant programmatic and monetary relief. In connection with the settlement, Ally has agreed to update its policy of requiring proof of U.S. permanent residence to open or be added to a checking or savings account, such that any individual with a valid SSN or individual taxpayer identification number ("ITIN") and who resides in the U.S. is eligible to open or be added to a checking or savings account from Ally, eliminating the harm alleged in the complaint for all future applicants, including Plaintiff Aguilar and Plaintiff Barroso da Silva and Class Members who wish to submit an application to open or be added to a checking or savings account.

The settlement also provides for monetary relief in the form of a settlement fund, with a floor of $280,000 and a ceiling of $325,000, an additional $25,000 in settlement administration costs,

---

[1] Plaintiff Barroso da Silva contacted Class Counsel on our around March 30, 2022. On or around April 15, 2022, Plaintiff's counsel informed Ally's counsel of its intention to file an amended complaint adding Plaintiff Barroso da Silva as an additional class representative. Plaintiff's counsel did not file an amended complaint at that time due to the Parties' settlement discussions, but Ally has agreed that in light of Barroso da Silva's willingness to serve as a class representative and participation in settlement negotiations as if an amended complaint had been filed, Barroso da Silva would be eligible to receive an incentive award from Ally consistent with any award to Aguilar.

and $60,000 in attorneys' fees and costs. Saenz Decl., Exhibit ("Ex. A") ("Settlement Agreement" or ("Settlement Agmt.") §§ XX).[2] If the settlement administration costs exceed $25,000, the excess amount will be paid by Ally up to $10,000. Afterwards, any excess amount will be paid from the settlement fund, but only if the minimum threshold in the amount of $280,000 for claims is not met. *See* Saenz Decl.

For the reasons detailed below, the proposed settlement and Plaintiffs' Unopposed Motion for Preliminary Settlement Approval satisfy the requirements of Fed. R. Civ. P. 23. The Parties have engaged in good-faith, arms-length settlement negotiations, including conducting confirmatory discovery, and participating in a settlement conference with the Honorable Carolyn K. Delaney. Plaintiffs respectfully submit that the Court should grant preliminary approval of this valuable settlement, and further approve the issuance of notice to Class Members to allow them to submit claims, objections, or requests to opt out, as appropriate.

## BACKGROUND

### A. Ally's Policy of Requiring Proof of U.S. Permanent Residence to Access Deposit Accounts

Ally Financial Inc. is a digital financial services company. Ally Bank, the direct banking subsidiary of Ally Financial Inc., offers a full suite of consumer products, including deposit, personal lending, and mortgage products and services. Ally operates online only and has no physical branches. Throughout the relevant time period, Ally had a policy of requiring applicants for checking and savings accounts to provide proof of U.S. permanent residence. After discussions with Class Counsel, Ally agreed to update its policy, such that any individual with a valid SSN or ITIN and who resides in the U.S. is eligible to open or be added to a checking or savings account from Ally.

Plaintiff Aguilar is a DACA recipient with a valid SSN. Plaintiff Aguilar's application to open a checking and savings account was denied under Ally's prior policy of requiring permanent U.S. residence to open a checking or savings account.

---

[2] The exhibits referenced herein are attached to the accompanying Declaration of Thomas A. Saenz in Support of Plaintiffs' Unopposed Motion for Preliminary Settlement Approval ("Saenz Decl.")

Plaintiff Barroso da Silva is a K-1 visa recipient with a valid SSN who is married to a U.S. citizen. and who resides in the U.S.  Plaintiff Barroso da Silva's application to be added to his wife's checking and savings account was denied under Ally's policy.

**B.  Procedural History**

On December 20, 2021, Plaintiff Aguilar filed the complaint in this case, asserting on behalf of two putative classes, claims of alienage discrimination under Section 1981 of the Civil Rights Act, 42 U.S.C. § 1981, and immigration status discrimination under the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.*, based on Ally's policy of requiring proof of U.S. citizenship or lawful permanent residence to open a checking or savings account.  (ECF No. 1 ("Compl.").)

On March 16, 2022, the Court granted Plaintiff Aguilar and Ally's stipulation to stay the case deadlines to allow them to engage in settlement discussions.  (ECF No. 16; *see* ECF No. 18, 20, 24, 27, 29.)

On June 27, 2022, the Court granted the Parties' Protective Order and Confidentiality Agreement Concerning Confirmatory Discovery (ECF No. 22), and the Parties engaged in further settlement discussions, including the exchange of confirmatory discovery.

On November 28, 2022, the Court granted the Parties' stipulated request for a referral to Magistrate Judge Carolyn K. Delaney for a settlement conference.  (ECF No. 31.)

On January 12, 2023, the Parties participated in a settlement conference with the Honorable Judge Carolyn K. Delaney.  After discussion with the Parties and the Court, the Parties reached agreement on the material terms of a settlement.  (Saenz Decl.)  Since that time, the Parties have worked together diligently to negotiate the terms of the Settlement Agreement and accompanying notice documents. *Id.*

**C.  The Proposed Settlement**

**1.  The Settlement Classes**

For settlement purposes only, and consistent with the Parties' Settlement Agreement, Plaintiffs move to certify a National Class and a California Class (together, "Settlement Classes"). The Settlement Classes are defined as follows:

i.   "National Class" means those persons who applied for a checking or savings account between December 20, 2017 and the date of the Preliminary Approval Order, resided in the U.S., but outside of California, possessed a valid SSN or ITIN at the time of the application, and were not permitted to open or be added to a checking or savings account because they were not a U.S. permanent resident.  Settlement Agmt. § 1.10.2.

ii.   "California Class" means those persons who applied for a checking or savings account between December 20, 2019 and the date of the Preliminary Approval Order, resided in California at the time of the application, possessed a valid SSN or ITIN at the time of the application, and were not permitted to open or be added to a checking or savings account because they were not a U.S. permanent resident. *Id.* 1.10.1.

The Parties estimate that there are approximately 4,410 potential Class Members, including 3,638 members of the National Class and 772 members of the California Class. (Saenz Decl.)

**2.    Comparison of the Settlement Classes with the Complaint**

In the complaint, Plaintiffs proposed certification of two classes, a national class, and a California class, defined as follows:

i.   For the national class, "[a]ll persons who resided in the United States at the relevant time they applied for or attempted to apply for a checking or savings account from Ally Bank but were denied full and equal consideration by Ally Bank on the basis of alienage"; and

ii.   For the California class, "[a]ll persons who resided in California at the relevant time they applied for or attempted to apply for a checking or savings account from Ally Bank but were denied full and equal consideration by Ally Bank on the basis of their immigration status." (Compl. at 5.)

In substance, the Settlement Classes are broader than those proposed in the complaint, covering, in addition to any individual whose application to open a checking or savings account was denied, any individual whose application to be added to a checking or savings account was denied,

pursuant to Ally's policy of requiring proof of U.S. permanent residence. Settlement Agmt. § 1.10.1, 1.10.2.

Under the terms of the Settlement Agreement, members of the National Class are entitled to up to $250 for each Verified Claim, and members of the California Class are entitled to up to $2,500 for each Verified Claim. *Id.* § 3.3.5. This distinction between the settlement classes is fair and reasonable, because members of the California Class could be entitled to statutory damages under the Unruh Act of up to $4,000, which would not be available to members of the National Class. (Saenz Decl.); Cal. Civ. Code § 52(a).

### 3. Overview of the Settlement

The Settlement Agreement provides two key forms of relief for Class Members: (1) programmatic relief requiring Ally to update its deposit agreement and website, and amend its policies and procedures as appropriate, to provide that individuals with a SSN or ITIN who reside in the U.S. will be eligible to open or be added to checking and savings accounts from Ally, and (2) a settlement fund of between $280,000 and $325,000 to compensate Class Members who submit Verified Claims.

### a. Programmatic Relief

The settlement provides that Ally will update its deposit agreement and website, and amend its policies and procedures as appropriate, to provide that, subject to satisfying applicable Anti-Money Laundering, Bank Secrecy Act, or other regulatory requirements, and subject to Ally's standard fraud filters and account opening requirements, applicants for deposit accounts with a valid SSN or ITIN and who reside in the U.S. will be eligible to open deposit accounts or to be added as an accountholder to an existing deposit account ("Programmatic Relief"). Settlement Agmt. § 3.2.1. By eliminating the requirement to provide proof of U.S. permanent residence, the settlement eliminates the harm that Plaintiffs alleged in the complaint, and ensures that all individuals who have a valid SSN or ITIN and reside in the U.S. will be eligible to access to Ally's consumer banking products and services.

### b.     Monetary Relief

In addition to Programmatic Relief, Ally has agreed to create a settlement fund of between $280,000 and $325,000, which will cover: (a) payments of up to $250 for a Verified Claim submitted by National Class Members, and up to $2,500 for a Verified Claim submitted by California Class Members; and (b) Incentive Awards of $3,000 for Plaintiffs Aguilar and Plaintiff Barroso da Silva. Settlement Agmt. §§ 3.3.5, 15.2. In addition to the settlement fund, Ally has agreed to pay an additional $25,000 in settlement administration costs, and $60,000 in attorneys' fees and costs. Settlement Agmt. § 3.3.1, Saenz Decl. If the settlement administration costs exceed $25,000, Ally will pay up to $10,000. Any excess amount beyond $10,000 will be paid from the Settlement Fund, but only if the minimum threshold of $280,000 is not met.

The proposed plan of allocation fairly and adequately compensates Class Members. National Class Members are eligible to receive up to $250 for a Verified Claim, reflecting their potential entitlement to damages under Section 1981. *Id.* § 3.3.5. California Class Members are eligible to receive up to $2,500 for a Verified Claim, reflecting their potential entitlement to statutory damages under the Unruh Act of up to $4,000. *Id.* In the event that the total amount of payments to Class Members would exceed the value of the settlement fund, then the payments would convert to a pro rata share, with each California Class Member receiving three times the pro rata share of each National Class Member for each Verified Claim. *Id.*

Pursuant to the Settlement Agreement, within 30 days of preliminary approval, the Settlement Administrator will distribute Notice to all Class Members by U.S. mail. Settlement Agmt. § 7.3; Settlement Agmt. Ex. 1 (Notice). The Settlement Administrator will maintain a dual-language (English-Spanish) website, providing the Notice, claim verification form ("Claim Form"), and case information, including the complaint, relevant dates, Court orders, and contact information for Class Counsel. Settlement Agmt. § 6.2. The Settlement Administrator also will create a dual-language (English-Spanish) toll-free phone number to address any questions from Class Members. *Id.* Class Members will have at least 60 days to submit a Claim Form, and at least 45 days to file an objection with the Court or request to opt out by sending a written request to the Settlement Administrator. Settlement Agmt. §§ 1.7, 1.31, 1.33, 11.1, 11.2.

To make a claim, Class Members will be required to complete, sign, and submit a Claim Form to the Settlement Administrator. *Id.* § 5.2. The Claim Form will require each Class Member to affirm that: (1) the individual's application to open or be added to a checking or savings account from Ally was denied during the time period for the National Class or California Class; and (2) through a sworn written statement, that the individual possessed a valid SSN or ITIN and resided in the U.S. at the time of the denied application for which the individual is making a Verified Claim. *Id.* § 5.4. The Claim Form also will require each Class Member to affirm that he or she is prepared to submit Official Documentation, if requested, to verify his or her information.[3] Claim Forms may be submitted to the Settlement Administrator by mail or email, or online. Settlement Agmt. Ex. 2 (Claim Form).

In exchange for the monetary consideration described above, each Class Member, including Plaintiffs Aguilar and Barroso da Silva, will release Ally of any and all claims related to Ally's alleged denial of their application to open or be added to a checking or savings account from Ally based on alienage and/or immigration status, including, but not limited to, any claims under Section 1981 or the Unruh Act ("Released Claims"). Settlement Agmt. § 1.38.

Based on their experience and recent settlements, Plaintiffs estimate a claims rate of approximately 5% for the National Class and 15% for the California Class. *See, e.g.*, *Perez* v. *Wells Fargo*, No. 17 Civ. 454 (N.D. Cal. 2017), ECF No. 355 (8,555 out of 368,760 individuals who received notice, or approximately 2%, submitted claims); *Donnenfeld* v. *Petro, Inc.*, No. 17 Civ. 2310 (E.D.N.Y. Mar. 5, 2020), ECF No. 80-1 (8,074 out of 91,807 individuals who received notice, or approximately 8.6%, submitted claims); *In re MyFord Touch Consumer Litig.*, No. 13 Civ. 3072 (N.D. Cal. Nov. 7, 2019), ECF No. 542 (claims submitted on behalf of approximately 4.5% of the class); (*see also* Saenz Decl.). Plaintiffs further anticipate that claims submitted by California Class Members

---

[3]     Official Documentation includes: (1) a copy a Social Security Card; (2) an excerpted portion of a tax return document reflecting the Class Member's name and SSN or ITIN; (3) a letter from the Internal Revenue Service assigning the Class Member an ITIN; (4) a copy of an Employment Authorization Document (EAD); or (5) other documentation agreed to in good faith by the Parties, at the time of a denied application for which the individual is seeking to make a Claim. Settlement Agmt. § 1.32.

will be greater than those submitted by National Class Members because of the larger payment amount. *Id.*

In the event that the combined total payments to Class Members is less than $280,000, the difference between those combined total payments and $280,000 will be made as a *cy pres* donation to Immigrants Rising, Settlement Agmt. § 3.3.6, an organization that assists undocumented students with support and resources to receive an education, pursue careers, and obtain leadership opportunities (Saenz Decl.).

### c.   Incentive Awards

The Settlement provides that Class Counsel may apply for incentive awards of up to $3,000 each for Plaintiff Aguilar, the Class Representative, and Plaintiff Barroso da Silva, the Individual Plaintiff.  Settlement Agmt. § 15.2.

Here, incentive awards of up to $3,000 are reasonable to compensate Plaintiffs Aguilar and Barroso da Silva for their time and effort assisting Class Counsel to prosecute the claims of Class Members and negotiate a settlement on behalf of the Class.  The proposed incentive awards are within the range of those approved by courts in the Ninth Circuit, where "an incentive award of $5,000 is presumptively reasonable."  *Evans* v. *Zions Bancorporation, N.A.*, 2022 WL 16815301, at *8 (E.D. Cal. Nov. 8, 2022) (approving incentive award to class representatives of $5,000); *see Rivera* v. *Agreserves, Inc.*, 2017 WL 445710, at *17 (E.D. Cal. Feb. 1, 2017) (approving incentive award to class representative of $3,000).

### d.   Attorneys' Fees and Costs

The Settlement Agreement provides that, subject to the Court's approval, Ally shall pay Class Counsel $60,000 in attorneys' fees and expenses.  The amount of attorneys' fees and expenses was negotiated separately from the payments to class members and will not be paid out of the Settlement Fund relief available to class members.  Class Counsel will file an application seeking approval of its attorneys' fees and expenses.

### e.   Settlement Administration

The Settlement Agreement provides that Ally will pay the cost of Settlement Administration in the initial funding amount of $25,000.  Further, if Settlement Administration costs

exceed $25,000, Ally will pay up to an additional $10,000 to cover such costs. Afterwards, any excess Settlement Administration costs will be paid from the Settlement Fund, but only if the minimum threshold of $280,000 is not met. Settlement Agmt § 3.3.1. Class Counsel, with Ally's agreement, has selected Angeion Group ("Angeion") to be the Settlement Administrator. Angeion was selected through a competitive bid process, which involved evaluating bids from five potential settlement administrators. (Saenz Decl.) Based on those bids, the Parties determined that Angeion is best equipped to manage the notice and claims process negotiated by the Parties. (Saenz Decl.)

Angeion has agreed to perform the settlement administration work described in the Settlement Agreement for a fixed fee of $25,000, which Angeion anticipates will be sufficient to cover the total cost of settlement administration, including the cost of administering notice as required by the Class Action Fairness Act, 28 U.S.C. § 1715. Settlement Agmt. § 6.2; (Saenz Decl.). If the settlement administration work exceeds $25,000, Ally will pay up to an additional $10,000. Afterwards, any settlement administration work will be paid from the Settlement Fund, but only if the minimum threshold of $280,000 is not met. The Settlement Administrator's fee is being funded separately by Ally and is not part of the settlement fund. In addition, the amount of the fee represents between only 8% and 9% of the settlement fund, which is reasonable given the amount and complexity of the work to be performed, including processing and verifying Claim Forms—which will require manual review and, in some cases, requests for the submission of Official Documentation—and the need for translation services. Settlement Agmt. § 6.2; (Saenz Decl.). Angeion's fee is also "within the range of previous costs for claims administration awarded in this District." *Rivera*, 2017 WL 445710, at \*14; *see also Contreras* v. *Worldwide Flight Servs.*, 2020 WL 2083017, at \*9 (C.D. Cal. Apr. 1, 2020) ($25,000 for settlement administration was "reasonable given the class size and the costs and expenses associated with administering the notices" to 1,724 individuals and "distributing the awards to claimants").

### f.  Cy Pres

The settlement requires that Ally pay at least $280,000. In the event that the combined total payments to Class Members is less than $280,000, the difference between those combined total payments and $280,000 will be made as a donation *cy pres* to Immigrants Rising. Settlement Agmt

§ 3.3.6; *see also Six (6) Mexican Workers* v. *Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (holding that cy pres distribution is appropriate for the "limited purpose of distributing the unclaimed funds"); *Romero* v. *Perryman* (*In re Easysaver Rewards Litig.*), 906 F.3d 747, 761 (9th Cir. 2018) (concluding that "it was reasonable for the district court to approve the use of a *cy pres* distribution . . . as a mechanism to distribute unclaimed funds").

Immigrants Rising is a non-profit the provides college scholarships and resources to undocumented youth, including DACA recipients.  Saenz. Decl.  Immigrants Rising has a national reach and work to provide equal opportunity to the DACA community.  *See In reEasysaver Rewards Litigation*, 906 F.3d 747, 761–62 (9th Cir. 2018) (cy pres recipients should be selected in light of the objectives of the underlying statute and the interest of the class).

## ARGUMENT

**A.      The Court Should Grant Preliminary Settlement Approval.**

Approval of a settlement "'involves a two-step process in which the court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted.'"  *Brewer* v. *Salyer*, 2017 WL 2813178, at *2 (E.D. Cal. June 29, 2017) (citation omitted).  Preliminary approval, in turn, involves two steps: *First*, if a class has not been certified, the court must determine that the proposed settlement class meets the requirements for class certification.  Fed. R. Civ. P. 23(a), (b).  *Second*, the court must determine that the proposed settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see Hanlon* v. *Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998).

**1.      Certification is Proper Under Fed. R. Civ. P. 23.**

The parties agree to certification of the National and California Class for settlement purposes.  "The validity of use of a temporary settlement class is not usually questioned."  Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11:22 (4th ed. 2002).  Additionally, each of the Rule 23 requirements is met.

**a.      Fed. R. Civ. P. 23(a) is Satisfied.**

*First*, the numerosity requirement is satisfied, because joinder of Class Members would be impractical.  Fed. R. Civ. P. 23(a)(1).  Ally's records indicate that there are an estimated 4,410

individuals whose application to open or be added to a checking or savings account from Ally during the relevant period was denied because they did not provide proof of U.S. residence. (Saenz Decl.) The Parties further estimate that many of these individuals would be eligible to participate in the settlement as Class Members. (Saenz Decl.) Additionally, the "geographical disbursement of class members outside of one district"—here, across the U.S.—"increases the impracticability of joinder, and 'when the class is large, numbers alone are dispositive.'" *Wright* v. *Linkus Ents., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009) (England, J.).

*Second*, the commonality requirement is satisfied, because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The focus of the commonality inquiry is whether class treatment would "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 350 (2011). Here, common questions include whether Ally's policy denies individuals the opportunity to access Ally's banking products and services because of their alienage or immigration status, and further, whether that policy violates Section 1981 and/or the Unruh Act. The complaint also challenges Ally's uniform policy, which affects all putative class members. *See Stevens* v. *Harper*, 213 F.R.D. 358, 377 (E.D. Cal. 2002) (in the civil rights context, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.").

*Third*, the typicality requirement is satisfied, because the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts have concluded that "[c]laims and defenses are 'typical if they are reasonably coextensive with those of absent class members; they need not be 'substantially identical.'" *Brooks* v. *Pressed Juicery, Inc.*, 336 F.R.D. 484, 491 (E.D. Cal. 2020) (citation omitted). Here, Plaintiff Aguilar, the Class Representative, is typical of the class she proposes to represent because, at the time of her denied application, she resided in the U.S. and possessed a valid SSN, and she alleges that her application was denied because of Ally's policy.

*Fourth*, the adequacy requirement is satisfied, because Aguilar has fairly and adequately represented the interests of Class Members. Fed. R. Civ. P. 23(a)(4). Courts consider "two factors" in evaluating whether the requirement is met: (1) "whether there are any conflicts of interest

between plaintiffs and other class members"; and (2) "whether the named plaintiff and their counsel can be expected to 'prosecute the action vigorously on behalf of the class.'" *Id.* at 491-92 (quoting *Hanlon*, 150 F.3d at 1020). Here, the requirement is satisfied, because Aguilar has the same interest as other Class Members and has demonstrated that she can fairly and adequately protect their interests. As with all Class Members, Aguilar's application was denied pursuant to Ally's policy. (Saenz Decl.) Further, Aguilar and the Class Members have no conflicts of interest, and the Class Members stand to benefit substantially from Aguilar's pursuit of damages on their behalf. (Saenz Decl.) Lastly, Aguilar has vigorously represented the interests of Class Members and devoted time to the prosecution of the action, including having numerous phone calls and meetings with Class Counsel. (Saenz Decl.)

Additionally, Plaintiff Aguilar and other Class Members are represented by adequate counsel. The Mexican American Defense and Educational Fund ("MALDEF") has extensive experience litigating complex civil rights class actions, including serving as co-counsel in a class action brought against Wells Fargo Bank, N.A. alleging claims similar to those alleged here. Capitalizing on its experience from its years' long action against Wells Fargo, MALDEF has vigorously prosecuted this action through extensive, arms-length settlement discussions with Ally. (Saenz Decl.) Therefore, Class Counsel also satisfy the adequacy requirement of Fed. R. Civ. P. 23(a).

### b. Certification is Proper Under Fed. R. Civ. P. 23(b)(3).

Fed. R. Civ. P. 23(b)(3) requires that common questions predominate over individual ones, and that a class action also is super to other methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Each of these requirements is met.

*First*, the Settlement Classes are sufficiently cohesive to satisfy the predominance requirement. Predominance does not require "that each element of [a plaintiff's] claim [is] susceptible to classwide proof." *Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotation marks and citation omitted). Rather, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc.* v. *Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted). The requirement is easily met here, where Ally's policy of requiring proof of U.S. permanent residence applies to all Class Members.

*Second*, the superiority requirement is met.  Superiority turns on factors such as the desire of individual class members to bring individual actions, and the utility of litigating the claims in one forum.  Fed. R. Civ. P. 23(b)(3).  Here, "there is no indication[] that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason." *Tierno* v. *Rite Aid Corp.*, 2006 WL 2535056, at *11 (N.D. Cal. Aug. 31, 2006); *see Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 615 (1997) (predominance and superiority requirements are intended to promote "economies of time, effort, and expense, and . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results'").  Further, it would be wasteful and inefficient if hundreds of individual plaintiffs were to litigate their claims in separate proceedings.  *See, e.g.*, *Whiteway* v. *FedEx Kinko's Office & Print Servs., Inc.*, 2006 WL 2642528, at *11 (N.D. Cal. Sept. 14, 2006) ("The needless expenditure of additional time, effort and money that would be attendant to numerous individual suits is greatly reduced, and the potential for differing outcomes is avoided as well.").  Because proceeding as a class promotes economies of time, effort, and expense for Class Members, conserves judicial resources, and promotes public confidence in the judicial system by preventing inconsistent adjudications, the superiority requirement is met.

### c.    Plaintiffs' Counsel Should Be Appointed Class Counsel.

In assessing the adequacy of class counsel, courts consider the (1) work performed on the matter, (2) experience, (3) knowledge of the law, (4) resources committed by class counsel.  Fed. R. Civ. P. 23(g)(1)(A).  Here, Class Counsel satisfies these criteria, as detailed above.  *See supra* Section 1.A.a; (*see also* Saenz Decl.).

### B.    The Settlement Is Fair, Reasonable, and Adequate.

Once the Court has found class certification to be proper, the next step is for the court to determine whether the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026.  This analysis usually entails "an examination of whether the settlement is the product of non-collusive negotiations, has no obvious deficiencies, and does not otherwise improperly grant preferential treatment to class representatives or segments of the class." *Kutzman* v. *Derrel's Mini Storage, Inc.*, 2020 WL 406768, at *9 (E.D. Cal. Jan. 24, 2020).

Further, the Ninth Circuit has recognized that it is appropriate to "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez* v. *W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Courts may also assess the following factors, which are assessed in greater detail at final approval, including: (1) "the strength of the plaintiffs' case," "the risk, expense, complexity, and likely duration of further litigation," and "the risk of maintaining class action status throughout the trial," (2) "the amount offered in settlement," (3) "the extent of discovery completed and the stage of the proceedings," and (4) "the experience and views of counsel." *Hanlon*, 150 F.3d at 1026. Courts also consider "the presence of a governmental participant" and "the reaction of the class members to the proposed settlement." *Id.* These last two considerations are of no consequence here, because the first is not relevant, and the second cannot be assessed at this early stage.

### 1. There are Significant Hurdles to Any Recovery in this Case.

"[A]pproval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Reyes* v. *CVS Pharm., Inc.*, 2016 WL 3549260, at *7 (E.D. Cal. June 29, 2016) (citation omitted).

Here, there are substantial obstacles to full recovery. *First*, the probability of success "is by no means a foregone conclusion." *Id.* The case raises a relatively novel theory that implicates a number of unsettled issues. For example, Ally has asserted that its policy of requiring proof of U.S. permanent residence is justified by heightened risks inherent in granting access to deposit accounts to non-U.S. permanent residents, particularly because they operate only online, and therefore is lawful and consistent with applicable laws and regulations that require banks to adopt risk-based procedures to verify customer identities. *Second*, there are substantial obstacles to obtaining class certification. For example, Ally would have argued, among other things, that the claims of Class Members claims cannot be resolved on a class-wide basis because of differences in their individual applications, which could preclude a finding of predominance.

**2. The Settlement Amount is Appropriate.**

In evaluating a proposed settlement, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Mitchinson* v. *Love's Travel Stops & Country Stores, Inc.*, 2017 WL 2289342, at (E.D. Cal. May 25, 2017) (citation omitted).

Here, the monetary and programmatic relief offered in the settlement offer great value to Class Members. Although the precise amount of any monetary awards is not yet known, under any scenario, the monetary relief provided by the settlement is likely to be a substantial percentage of Class Members' maximum potential damages. The settlement also provides the maximum degree of programmatic relief.

National Class Members are eligible to receive individual payments of up to $250 per Verified Claim, which constitutes an excellent recovery. Given the challenges inherent in establishing Section 1981 liability on a class-wide basis, the operative complaint sought only injunctive relief in connection with the Section 1981 claim. Even if Plaintiff filed an amended complaint seeking compensatory damages, Class Members would face significant challenges in establishing entitlement to compensatory damages resulting from Ally's denial of their applications in light of the availability of deposit accounts at other banks that did not have a U.S. permanent residency requirement and offered accounts on similar financial terms and conditions as Ally. Given the risks of an adverse decision on class certification and the merits, even a lower payment amount would constitute an excellent recovery for National Class Members.

California Class Members are eligible to receive individual payments of up to $2,500 per Verified Claim, which is nearly two-thirds of the $4,000 statutory damages available under the Unruh Act. Cal. Civ. Code § 52(a). Given the risks of an adverse decision on class certification and the merits, even lower a payment amount would constitute an excellent recovery for California Class Members.

The settlement also offers the maximum degree of programmatic relief that Class Members could obtain. Ally has agreed to update its policies such that individuals who possess a valid SSN or ITIN and reside in the U.S. can access their consumer banking products and services, subject to Ally's standard account opening requirements. Non-U.S. permanent residents with a SSN or ITIN

and who reside in the U.S. nationwide—not just Class Members—will benefit from the programmatic relief afforded by the settlement. Therefore, the programmatic relief achieved here provides a significant benefit to Class Members and others nationwide and is as good as, or better than, what could have been obtained through protracted litigation and trial.

### 3. The Extent of Discovery Supports Settlement.

In the context of a class action settlement, "'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.'" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted); *accord Criswell* v. *Boudreaux*, 2021 WL 5811887, at *6 (E.D. Cal. Dec. 7, 2021) (same).

Here, Plaintiffs Aguilar and Barroso da Silva have pursued claims on behalf of the putative classes for more than a year, including conducting confirmatory discovery for the purpose of evaluating a potential settlement of the claims against Ally. Based on this confirmatory discovery, and its recent, extensive experience litigating almost identical claims against Wells Fargo, Class Counsel was able to assess strengths and weaknesses of the claims and the value of the potential settlement. The settlement is the product of Class Counsel's informed judgment.

### 4. Counsel's Experience and Views Support Approval.

In considering the adequacy of the terms of a settlement, "'[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *Van Lith* v. *iHeartMedia + Ent., Inc.* 2017 WL 4340337, at *13 (E.D. Cal. Sept. 29, 2017) (citation omitted). "This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Id.* (citation omitted). Generally, courts "should be hesitant to substitute its own judgment for that of counsel.'" *Id.*

Here, Class Counsel specialize in prosecuting complex civil rights class actions, particularly those asserting Section 1981 and Unruh Act claims, and over many years have both successfully and unsuccessfully litigated many such cases, enabling Class Counsel to weigh the strengths and weaknesses of the claims and Ally's potential defenses. (Saenz Decl.). Based on their experience, Class Counsel believe that the settlement is fair, reasonable, and adequate.

**5.      The Parties Participated in Good Faith, Arms-Length Negotiations.**

Courts have ruled that "[a] settlement is presumed fair if it 'follow[s] sufficient discovery and genuine arms-length negotiation.'" *Criswell*, 2021 WL 5811887, *6 (citation omitted). Here, the settlement is both substantively and procedurally fair. *First*, the settlement is substantively fair, providing excellent monetary and programmatic relief to Class Members. *Second*, the settlement is procedurally fair, having been reached after nearly a year of settlement discussions among the Parties, including the exchange of confirmatory discovery and participation in a settlement conference with the Court.  (Saenz Decl.)

**6.      The Proposed Notice is Clear and Adequate.**

The proposed Notice is the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B), and further, is "reasonable," Fed. R. Civ. P. 23(e)(1).  The proposed Notice and Claim Form are consistent with modern best practices set forth by the Federal Judicial Center.[4] Settlement Agmt. Ex. 1 (Notice), Ex. 2 (Claim Form).  Specifically, the Notice and Claim Form use simple language and include: (1) Class Counsel's contact information, (2) the address for a website maintained by the Settlement Administrator, including case documents and information, and (3) instructions for accessing the case docket through PACER.  *Id.*  The Notice also includes the date of the fairness hearing for final approval and notes that the date of the hearing may change without further notice to Class Members, and that Class Members should review the settlement website or the case docket to confirm that the date of the hearing has not changed.  Settlement Agmt. Ex. 1 (Notice).  The Notice further provides the deadlines for submitting an objection, request to opt out, or Claim Form.  *Id.*

The Claim Form is clear, user-friendly, and focused on the key information concerning Class Members.  Settlement Agmt. Ex. 2 (Claim Form).  The Claim Form is pre-printed with a fillable and returnable verification form and Form W-9 (with postage pre-paid) to ensure that Class Members receive optimal tax treatment for any payment.  *Id.*  The Claim Form also will be made available

---

[4]      *See* Illustrative Forms of Class Action Notices: Overview, Fed. Judicial Ctr., https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction (last visited February 13, 2023).

online, where Class Members can submit their Claim Form through a secure online submission form or by email. *Id.*

### THE COURT SHOULD SCHEDULE THE FINAL APPROVAL HEARING.

Plaintiffs, in consultation with Ally, propose the following schedule for finalizing and implementing the Settlement:

| Event | Proposed Date |
|---|---|
| **Preliminary approval hearing** | **April 6, 2023** |
| Court enters preliminary approval order* | May 18, 2023 |
| Deadline for Ally to provide class list data to Settlement Administrator | June 1, 2023 |
| Deadline for settlement administrator to disseminate Notice and establish settlement website | June 19, 2023 |
| Deadline to submit objection and/or request to opt out | July 3, 2023 |
| Deadline to submit Claim Form | July 17, 2023 |
| Deadline to submit Official Documentation, if requested | August 7, 2023 |
| Deadline to file Plaintiffs' motion for attorneys' fees and costs and/or incentive awards | September 19, 2023 |
| Deadline to file Plaintiffs' motion for final settlement approval | October 5, 2023 |
| **Final approval hearing** | **October 19, 2023** |

| | |
|---|---|
| Court enters final approval order* | November 30, 2023 |
| Effective date, if no appeal* | January 2, 2024 |
| Deadline for Ally to fund settlement fund | January 16, 2024 |
| Deadline for settlement administrator to mail payment to Class Members | February 1, 2024 |

***Proposed dates keyed off of this date**

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) certify, for settlement purposes only, a settlement class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (2) grant preliminary approval of the Settlement; (3) appoint Plaintiff Mariela Aguilar Velazquez as representative of the class; (4) appoint Plaintiffs' counsel as Class Counsel; (5) appoint Angeion Group as Settlement Administrator; (6) approve mailing to the Class Members the proposed Notice and establishment of a settlement website; and (7) schedule a hearing for final approval of the Settlement at least one hundred fifty (150) days after entry of the Preliminary Approval Order.

Dated: March 13, 2023

Respectfully submitted,
/s/ *Thomas A. Saenz*
Thomas A. Saenz (SBN159430)
Luis L. Lozada (SBN 344357)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone:     (213) 629-2512
Facsimile:      (213)629-0266
Email: tsaenz@maldef.org
             llozada@maldef.org

*Attorneys for Plaintiff Mariela Aguilar Velazquez and the Proposed Classes*