1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11    MARIELA AGUILAR VELAZQUEZ, an            No.  2:21-cv-02375-MCE-DB
      individual, and RONEY EDLER
12    BARROSO DA SILVA, an individual,
      on behalf of themselves and all others
13    similarly situated,                       **MEMORANDUM AND ORDER**

14                     Plaintiffs,

15          v.

16    ALLY BANK,

17                     Defendant.

18

19          Through this class action, Plaintiffs Mariela Aguilar Velazquez ("Aguilar") and

20    Roney Edler Barroso da Silva ("Barroso") (collectively, "Plaintiffs"), individually and on

21    behalf of all others similarly situated, seek relief from Defendant Ally Bank ("Defendant"

22    or "Ally") arising from its alleged "policy of denying full access to checking and savings

23    accounts, in addition to other banking products and services, to applicants who are not

24    United States citizens or Legal Permanent Residents ('LPRs')."  First Am. Compl., ECF

25    No. 45 ¶ 1 ("FAC").[1]  Presently before the Court is Plaintiffs' unopposed Motion for

26    ///

27    _____

28          [1] The Court ordered Plaintiffs to file an amended complaint to include Barroso as a named Plaintiff
      and class representative.

1

Preliminary Settlement Approval.  ECF Nos. 35 ("Pls.' Mot."), 43.  The Court heard oral argument on April 20, 2023.  For the following reasons, Plaintiffs' Motion is GRANTED.

## BACKGROUND

### A.     Factual Background[2]

Since 2012, Aguilar has been a recipient of Deferred Action for Childhood Arrivals ("DACA") and has continuously possessed an employment authorization card and Social Security Number ("SSN").  She resides in Sacramento, California.  On November 2, 2020, Aguilar applied to open a checking and savings account with Defendant through its online portal in which she uploaded her employment authorization card and SSN obtained under the DACA initiative.  A couple of days later, on November 4, 2020, Defendant's representative informed Aguilar that she is ineligible to open a checking and savings account because she is not a United States citizen or LPR.  When Aguilar asked if this denial was allowed by law, the representative responded that it is Defendant's policy to deny an application for these reasons.  Aguilar subsequently received a letter confirming that Defendant only "offer[s] accounts to U.S. citizens and resident aliens." This policy is also confirmed on Defendant's website.  Aguilar alleges that she has never been denied the opportunity to open a checking or savings account at other lending institutions because of her immigration status.

Similarly, Barroso is a K-1 Visa recipient and has continuously possessed a valid SSN.  In August 2021, he married Kari Johnson ("Johnson"), an American citizen, and they reside in Overland Park, Kansas.  A month later, in September 2021, Johnson applied to add Barroso to her checking and savings account with Defendant through its online portal and uploaded, in part, his SSN obtained under the K-1 Visa program. Some days later, Defendant sent a secure message directing Johnson to call its customer service line.  Defendant's representative then informed her that Barroso's documents were insufficient and denied her request to add him to her existing account.

---

[2] The following recitation of facts is taken, primarily verbatim, from the FAC.

On February 28, 2022, after Barroso received his REAL ID driver's license issued by the State of Kansas, Johnson again attempted to add him to her checking and savings account with Defendant through its online portal.  Days later, on March 14, 2022, Johnson received another secure message to call Defendant and a representative again informed her that Barroso is ineligible to be added to her existing checking and savings account because he is not a United States citizen or LPR.  The representative told Johnson that Barroso needs to upload a Permanent Resident Card in order to be added to her account.

### B.    Procedural History

Aguilar initiated the present class action lawsuit in this Court on December 20, 2021, alleging the following causes of action:  (1) Alienage Discrimination in violation of 42 U.S.C. § 1981 ("§ 1981"), and (2) violation of California's Unruh Civil Rights Act, California Civil Code §§ 51 et seq. ("Unruh Act").  On March 16, 2022, and on multiple occasions thereafter, this Court granted the parties' stipulations to stay the case pending settlement discussions and extend Defendant's deadline to file a response to the Complaint.  See ECF Nos. 16, 18, 20, 24, 27, 29.  Pursuant to stipulation, the matter was eventually referred to the magistrate judge for a settlement conference, which occurred on January 12, 2023.  ECF Nos. 31, 34.  The parties reached a settlement at that conference and executed their settlement agreement on March 13, 2023.  Aguilar subsequently filed the present unopposed Motion on the same day.

Following oral argument and in response to this Court's order, on April 28, 2023, Plaintiffs filed the operative FAC, which lists Barroso as a named Plaintiff in addition to Aguilar.  See ECF Nos. 44, 45.  As requested by the Court, Plaintiffs also filed, in part, (1) an Amended Settlement Agreement and Release (the "Settlement"), (2) amended Notice and Claim Form, (3) an exclusion or opt-out form, and (4) an amended proposed order.  See Saenz Am. Decl., ECF No. 46.

///

///

**C.** **Settlement Agreement**

On April 28, 2023, the parties executed the Settlement.  <u>See</u> Ex. A, Saenz Am. Decl., ECF No. 46-1.  For settlement purposes only, Plaintiffs move to certify the following classes ("Class Members"):

> "California Class" means those persons who applied for a checking or savings account with [Defendant] between December 20, 2019 and the date of the Preliminary Approval Order, resided in California at the time of the application, possessed a valid [SSN] or Individual Taxpayer Identification Number [("ITIN")] at the time of the application, and were not permitted to open or be added to an Ally checking or savings account because they were not U.S. permanent residents.

> "National Class" means those persons who applied for a checking or savings account with [Defendant] between December 20, 2017 and the date of the Preliminary Approval Order, resided in the U.S. but outside of California, possessed a valid SSN or ITIN at the time of the application, and were not permitted to open or be added to an Ally checking or savings account because they were not U.S. permanent residents.

<u>Id.</u> §§ 1.10.1, 1.10.2.  The parties estimate that there are approximately 3,638 members of the National Class and 772 members of the California Class (total 4,410 class members).  Pls.' Mot., at 10.

The Settlement provides two forms of relief for Class Members:  (1) Programmatic Relief requiring Defendant to "update its deposit agreement and website, and amend its policies and procedures as appropriate, to provide that . . . applicants for deposit accounts with a SSN or ITIN who are residents or citizens of the United States will be eligible to open deposit accounts or to be added as an accountholder to an existing deposit account"; and (2) a Settlement Fund of between $280,000 and $325,000 to compensate Class Members with verified claims.  Settlement §§ 3.2.1, 3.3.1, 3.3.2.  Members of the California Class are entitled to $2,500 per denied application whereas members of the National Class are entitled to $250.  <u>Id.</u> § 3.3.5; <u>see</u> Pls.' Mot., at 11 ("[M]embers of the California Class could be entitled to statutory damages under the Unruh Act of up to $4,000, which would not be available to members of the National Class.") (citing Cal. Civ. Code § 52(a)).  "In the event that the total amount of Verified

4

Claims . . . exceeds [$325,000], or the amount remaining after deduction of any excess

settlement administration costs, the payments made to [class members] for Verified

Claims will convert to a pro rata share, with each California Class Member entitled to

three times the pro rata share for each Verified Claim as compared to the pro rata share

for each Verified claim for each National Class Member."  Settlement § 3.3.5.  On the

other hand, if "the combined total payments to Settlement Class Members [are] less than

[$280,000], the difference between those combined total payments and [$280,000] shall

be distributed to the following cy pres recipient:  Immigrants Rising."  Id. § 3.3.6; see Pls.'

Mot., at 16 ("Immigrants Rising is a non-profit [that] provides college scholarships and

resources to undocumented youth, including DACA recipients.").

Defendant also agrees to pay $25,000 in administration costs to Angeion Group

("Settlement Administrator"); however, if the administration costs exceed that amount,

Defendant will pay up to an additional $10,000.  Settlement § 3.3.1.  If the administration

costs exceed $10,000, then the excess amount will be paid from the Settlement Fund,

but only if the minimum $280,000 threshold is not met.  Id.  Finally, separate from the

Settlement Fund, Plaintiffs seek incentive awards of $3,000 each and Defendant agrees

to pay Plaintiffs' counsel, the Mexican American Legal Defense and Educational Fund

("MALDEF" or "Class Counsel"), $60,000 in attorneys' fees and costs.  Id. §§ 15.1, 15.2.

Not later than 30 days after preliminary approval, Defendant will provide the

Settlement Administrator with the Notice List and the Settlement Administrator will then

distribute the Notice and Claim Form to all Class Members by first class U.S. mail

("Notice Mailing Date").[3]  See id. §§ 7.2, 7.3; see Ex. 2 to Settlement, Saenz Am. Decl.,

ECF No. 46-3.  "Prior to mailing, the Settlement Administrator shall attempt to update the

last known addresses of the Class Members set forth on the Notice List through the

National Change of Address system or a similar database, or conduct a skip trace to

locate and/or update mailing addresses of potential Class Members on the Notice List."

---

[3] Class Counsel stated at the hearing that they would also make postings in English and Spanish on social media alerting potential Class Members to the Settlement.

1   Id. § 7.3.  If any Notice is returned with a forwarding address, the Settlement

2   Administrator will re-mail the Notice to that address; however, if any Notice is returned

3   undeliverable, "the Settlement Administrator will attempt one skip-trace and if the skip-

4   trace establishes an alternate address, the Settlement Administrator shall re-mail the

5   Notice to that alternative address."[4]  Id. § 7.5.  The Settlement Administrator will also

6   create a dual English-Spanish website and operate a dual English-Spanish automated

7   toll-free contact center to address questions from Class Members.[5]  Id. § 6.2.

8           To receive a payment from the Settlement Fund, Class Members must complete

9   and submit the Claim Form within 60 days after the Notice Mailing Date.  Id. §§ 1.7, 5.2

10  ("The Claim Form will be mailed with the Notice and will be posted on the Settlement

11  Website."); see Ex. 1 to Settlement, Saenz Am. Decl., ECF No. 46-2.  The Claim Form

12  can be submitted by mail, email, or online.  See id. at 2.  Class Members will need to

13  affirm that they applied for a checking or savings account during the relevant time period,

14  but they were not permitted to do so, and that at the time of denial, they had a current

15  and valid SSN or ITIN and resided in the United States.  Settlement § 5.2.  If there is any

16  doubt as to the validity of a claim, that Class Member may be requested to provide

17  documentation such as a copy of their Social Security card or excerpted portion of a tax

18  return document reflecting their name and SSN or ITIN.  Id. § 5.2.2.; see Ex. 4 to

19  Settlement, Saenz Am. Decl., ECF No. 46-5.

20          To be excluded from the Settlement, a Class Member must submit the Request to

21  Opt Out form, which "shall:  (a) identify the case name; (b) identify the name and

22  address of the person requesting exclusion; (c) be personally signed by the person

23

24          [4] Counsel stated at the hearing that the Settlement Administrator will apply the same procedures if a Class Member no longer resides in the United States.

25          [5] After the Court expressed concern at the hearing that the Notice and Claim Form were not

26  provided in Spanish, the parties amended them to include sentences in Spanish directing Class Members to the website and call center and informing them that translations of all documentation would be provided

27  on the website.  See Exs. 1–2 to Settlement, Saenz Am. Decl., ECF Nos. 46-2, 46-3.  Additionally, the parties indicated at the hearing that it was unlikely that a significant number of Class Members do not

28  speak either English or Spanish, and thus there is no need to provide the documentation in another language.

requesting exclusion; (d) contain a statement that indicates a desire to be excluded from the Settlement Class, such as 'I hereby request that I be excluded from the proposed Settlement Class in the Action'; and (e) affirm via sworn statement that the potential Class Member applied for a checking or savings account during the time period for the California Class or the National Class, possessed a valid SSN or ITIN at the time of the application, and was not permitted to open or be added to a checking or savings account because they were not U.S. permanent residents."  Settlement § 11.1; <u>see also</u> Ex. 3 to Settlement, Saenz Am. Decl., ECF No. 46-4 (stating that the exclusion request must be sent to the Settlement Administrator by mail or email).[6]  The Request to Opt Out form also includes a sentence in Spanish directing class members to the website for translation.  <u>See id.</u>  "Any Settlement Class Member who does not opt out of the Settlement in the manner described herein shall be deemed to be part of the Settlement Class upon the expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments."  Settlement § 11.2.

Class Members who do not exclude themselves from the Settlement may object to it.  <u>Id.</u> § 12.2.  A valid objection must be in writing and include the following information:  "(a) the case name and number; (b) the name, address, and telephone number of the Settlement Class Member objecting and, if represented by counsel, of his/her counsel; (c) the reasons for the objection; (d) a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel; and (e) affirm by a sworn statement that the Settlement Class Member applied for a checking or savings account during the time period for the California Class or the National Class, possessed a valid SSN or ITIN at the time of the application, and was not permitted to open or be added to a checking or savings account because they were not U.S. permanent residents."  <u>Id.</u> §§ 12.2, 12.3.  Objections must be timely filed with the Court.

---

[6] The first settlement agreement previously required any Class Member seeking exclusion from the settlement to send a written request to the Settlement Administrator containing all of this information.  <u>See</u> Ex. 2, Saenz Decl., ECF No. 36, at 81.  However, the Court expressed concern that this procedure would be too difficult, and the parties subsequently drafted a Request to Opt Out form.

1    Id. § 12.2.  "Subject to approval of the Court, any Class Member who submits a [valid

2    and timely] written objection . . . may appear, in person or by counsel, at the Final

3    Approval Hearing held by the Court, to show cause why the proposed Settlement should

4    not be approved as fair, adequate, and reasonable."  Id. § 12.7.

5         In exchange for the monetary relief, "each Class Member, including Plaintiffs

6    Aguilar and Barroso da Silva, will release [Defendant] of any and all claims related to

7    [Defendant's] alleged denial of their application to open or be added to a checking or

8    savings account from [Defendant] based on alienage and/or immigration status,

9    including but not limited to, any claims under Section 1981 or the Unruh Act[.]"  Pls.'

10   Mot., at 13; see Settlement § 1.40 ("Released Claims").

11

12                                **ANALYSIS**

13

14   **A.     Class Certification**

15        A court may certify a class if a plaintiff demonstrates that all of the prerequisites of

16   Federal Rule of Civil Procedure 23(a)[7] have been met, and that at least one of the

17   requirements of Rule 23(b) has been met.  See Pointer v. Bank of Am. Nat'l Ass'n,

18   No. 2:14-cv-00525-KJM-CKD, 2016 WL 696582, at *4 (E.D. Cal. Feb. 22, 2016).  The

19   Court will address each of these in turn.

20             **1.     Rule 23(a)**

21        Rule 23(a) provides four prerequisites to class certification:  "(1) the class is so

22   numerous that joinder of all members is impracticable; (2) there are questions of law or

23   fact common to the class; (3) the claims or defenses of the representative parties are

24   typical of the claims or defenses of the class; and (4) the representative parties will fairly

25   and adequately protect the interests of the class."  First, the numerosity requirement is

26   satisfied because Plaintiffs estimate that there are 4,410 class members.  See Pls.' Mot.,

27   at 10.  Second, the commonality requirement is met because Defendant's policy affects

28   ────────────────
              [7] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

                                          8

all putative Class Members and "common questions include whether [Defendant's] policy

denies individuals the opportunity to access [Defendant's] banking products and services

because of their alienage or immigration status, and further, whether that policy violates

Section 1981 and/or the Unruh Act."  Id. at 17.  Third, Plaintiffs' claims are typical of the

Class because they allege that their applications were denied because of Defendant's

policy and that at the time of their denied applications, they resided in the United States

and possessed a valid SSN.  Id.

Lastly, the adequacy requirement is satisfied because Plaintiffs have the same

interests as the other class members and have "vigorously represented the interests of

Class Members and devoted time to the prosecution of the action, including having

numerous phone calls and meetings with Class Counsel."  Id. at 17–18.  Plus, Class

Counsel "has extensive experience litigating complex civil rights class actions, including

serving as co-counsel in a class action brought against Wells Fargo Bank, N.A. alleging

claims similar to those alleged here."  Id. at 18.  Overall, the Court finds that Plaintiffs

have satisfied Rule 23(a)'s requirements.

### 2.      Rule 23(b)(3)

Plaintiffs here seek certification under Rule 23(b)(3), which requires "that the

questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  The predominance

requirement is met because Defendant's "policy of requiring proof of U.S. permanent

residence applies to all Class Members."  Pls.' Mot., at 18.  As for the superiority

requirement, Class Counsel "is not aware of parallel litigation that could give rise to any

reverse auction concerns," and there is no indication that Class Members seek to

individually control their cases.  See id. at 19; Saenz Am. Decl., ECF No. 46 ¶ 33.  As a

result, "it would be wasteful and inefficient if hundreds of individual plaintiffs were to

litigate their claims in separate proceedings."  Pls.' Mot., at 19.  Therefore, the Court

finds Rule 23(b)(3) is also satisfied.

### 3. Preliminary Conclusion

Because Plaintiffs have established facts sufficient to meet the requirements of Rule 23(a) and (b)(3), they have satisfied the elements essential to settlement class certification for both the National and California Classes.  Accordingly, the Court preliminarily certifies both Classes for purposes of settlement.

### B. Fairness Determination

The Court may approve a class action settlement only if it is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  Courts generally find preliminary approval of a class action settlement appropriate "if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval[.]"  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal citation and alteration omitted).  Because "preliminary approval of a settlement has both a procedural and a substantive component[,]" id. at 1080, the Court will address each of them in turn.

### 1. Procedural Fairness

First, "it is appropriate for the court to consider the procedure by which the parties arrived at their settlement to determine whether the settlement is truly the product of arm's length bargaining, rather than the product of collusion or fraud."  Millan v. Cascade Water Serv., Inc., 310 F.R.D. 593, 613 (E.D. Cal. 2015).  A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation[.]"  Adoma v. Univ. of Phx., Inc., 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (citation omitted).  Here, the parties engaged in "nearly a year of settlement discussions . . ., including the exchange of confirmatory discovery," and the Settlement was reached during a settlement conference with the magistrate judge.  Pls.' Mot., at 23; see also Saenz Am. Decl., ECF No. 46 ¶ 32 ("The Parties first negotiated programmatic and monetary relief to Class Members, and then negotiated incentive awards to the Class Representatives and Class

///

Counsel's attorneys' fees and expenses.").  As a result, the Court finds that the parties participated in good faith and arms-length negotiations.

### 2.    Substantive Fairness

"The amount offered in settlement is generally considered to be the most important consideration[] of any class settlement."  Millan, 310 F.R.D. at 611.  "To determine whether that settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated."  Id.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).  Courts should also "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  Tableware, 484 F. Supp. 2d at 1080.

Here, "California Class Members are eligible to receive individual payments of up to $2,500 per Verified Claim, which is nearly two-thirds of the $4,000 statutory damages available under the Unruh Act."  Pls.' Mot., at 21 (citing Cal. Civ. Code § 52(a)).  On the other hand, National Class Members are only "eligible to receive individual payments of up to $250 per Verified Claim," but Plaintiffs contend that there are "challenges inherent in establishing Section 1981 liability on a class-wide basis . . ."  Id.  For example, "Class Members would face significant challenges in establishing entitlement to compensatory damages resulting from [Defendant's] denial of their applications in light of the availability of deposit accounts at other banks that did not have a U.S. permanent residency requirement and offered accounts on similar financial terms and conditions as" Defendant.  Id.  Additionally, the $3,000 incentive awards for each Plaintiff are not far off from the proposed payments to Class Members.  The Court thus finds that the monetary relief for both Classes is appropriate.

In addition to monetary relief, Defendant "has agreed to update its policies such that individuals who possess a valid SSN or ITIN and reside in the U.S. can access their consumer banking products and services, subject to [Defendant's] standard account

11

1  opening requirements." Id.  This means that "[n]on-U.S permanent residents with a SSN

2  or ITIN and who reside in the U.S. nationwide—not just Class Members—will benefit

3  from the programmatic relief afforded by the settlement."  Id. at 21–22.  Ultimately, the

4  Court finds that the relief set forth in the settlement is within the range of possible

5  approval.

6      **C.    Notice**

7      Under Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all

8  class members who would be bound by the proposal . . ."

9          For any class certified under Rule 23(b)(3)—or upon ordering
            notice under Rule 23(e)(1) to a class proposed to be certified
10          for purposes of settlement under Rule 23(b)(3)—the court
            must direct to class members the best notice that is practicable
11          under the circumstances, including individual notice to all
            members who can be identified through reasonable effort.  The
12          notice may be by one or more of the following:  United States
            mail, electronic means, or other appropriate means.   The
13          notice must clearly and concisely state in plain, easily
            understood language:
14
            (i)  the nature of the action;
15
            (ii)  the definition of the class certified;
16
            (iii)  the class claims, issues, or defenses;
17
            (iv)  that a class member may enter an appearance through an
18          attorney if the member so desires;

19          (v)  that the court will exclude from the class any member who
            requests exclusion;
20
            (vi)  the time and manner for requesting exclusion; and
21
            (vii)  the binding effect of a class judgment on members under
22          Rule 23(c)(3).

23  Fed. R. Civ. P. 23(c)(2)(B).

24      The Court finds that the parties' notice plan meets Rule 23.  As previously set

25  forth, the Settlement Administrator will mail the Notice to the last known addresses of the

26  Class Members.  See Settlement § 7.3.  If any Notice is returned with a forwarding

27  address, the Settlement Administrator will re-mail the Notice, but if the Notice is returned

28  as undeliverable, the Settlement Administrator will attempt to determine the correct

mailing address using skip trace.  See id. § 7.5.  The Settlement Administrator will also

operate a dual English-Spanish website and call center.  See id. § 6.2.  Counsel assured

the Court at the hearing that the same procedures would apply to Class Members

residing outside of the United States.  Additionally, Class Counsel stated that the

Settlement Administrator will also post the Notice on social media.

As for the content, the Notice and Claim Form contain all of the requisite

information, such as the nature of the action and the exclusion procedures.  See

Exs. 1–2 to Settlement, Saenz Am. Decl., ECF Nos. 46-2, 46-3.  In light of the Court's

concern that the original Notice and Claim Form were only provided in English, the

parties amended them to include sentences in Spanish directing class members to the

dual English-Spanish website and call center and informing them that translations of all

documentation would be provided on the website.  See id.  Overall, the Court finds the

Notice and proposed Notice plan is practicable under the circumstances and comports

with due process.

## FINAL CONCLUSION AND ORDERS

Based on the foregoing reasons, the Court orders the following:

1.  Plaintiffs' Motion for Preliminary Settlement Approval, ECF No. 35, is

GRANTED.

2.  The Court hereby preliminarily certifies the following classes solely for

purposes of the settlement:

> "California Class" means those persons who applied for a
> checking or savings account with [Defendant] between
> December 20, 2019 and the date of the Preliminary Approval
> Order, resided in California at the time of the application,
> possessed a valid [SSN] or Individual Taxpayer Identification
> Number [("ITIN")] at the time of the application, and were not
> permitted to open or be added to an Ally checking or savings
> account because they were not U.S. permanent residents.

> "National Class" means those persons who applied for a
> checking or savings account with [Defendant] between

13

December 20, 2017 and the date of the Preliminary Approval Order, resided in the U.S. but outside of California, possessed a valid SSN or ITIN at the time of the application, and were not permitted to open or be added to an Ally checking or savings account because they were not U.S. permanent residents.

3. The Court hereby appoints Plaintiffs as Class Representatives and MALDEF as Class Counsel.

4. The Court hereby appoints Angeion Group as the Settlement Administrator.

5. The Court hereby approves the proposed Notice plan set forth above and in the Settlement.  Not later than thirty (30) days from the entry of this Memorandum and Order, the Settlement Administrator shall distribute Notice to all Class Members by first class U.S. mail and create the dual English-Spanish website and automated toll-free contact center in accordance with the Settlement ("Notice Mailing Date").

6. Class Members who wish to receive payment under the Settlement shall complete, sign, and return the Claim Form in accordance with the instructions contained therein.  All Claim Forms must be postmarked no later than sixty (60) days after the Notice Mailing Date ("Claim Deadline").  If requested, any official documentation required to support a Claim Form must be submitted no later than twenty-one (21) days after the Claim Deadline.  Any Class Member who does not submit a timely and valid Claim Form shall be barred from receiving payment under the Settlement, unless otherwise ordered by the Court, but shall nevertheless be bound by any Final Judgment entered by the Court.

7. Class Members who wish to exclude themselves from the Settlement must complete, sign, and return the Request to Opt Out form not later than forty-five (45) days after the Notice Mailing Date to the Settlement Administrator.  If requested, the Request to Opt Out form must also include official documentation as set forth above.  All Class Members who submit valid, verified, and timely Requests to Opt Out in the manner set forth in this paragraph and Memorandum and Order shall have no rights under the Settlement and shall not be bound by the Settlement or any Final Judgment.

///

8. Any Class Member who does not timely and validly exclude himself or herself from the Settlement Class may object to the Settlement but must do so in writing not later than forty-five (45) days after the Notice Mailing Date ("Objection Deadline") in accordance with the Settlement and this Memorandum and Order. The written Objection must be filed with the Clerk of the United States District Court for the Eastern District of California, Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, California 95814. If requested, the Objection must also include official documentation as set forth above.

9. Any Class Member who does not exclude himself or herself from the Settlement Class and/or who files and serves a timely and valid written Objection may appear at the Final Approval Hearing, at his or her own expense, individually or through counsel of his or her own choice. An objector must file with the Clerk of Court a Notice of Intention to Appear at the Final Approval Hearing by the Objection Deadline. Any Class Member who does not file a timely and valid Notice of Intention to Appear shall not be entitled to appear at the Final Approval Hearing and raise any objections.

9. All Class Members who do not exclude themselves from the Settlement Class by properly and timely submitting a Request to Opt Out form shall be bound by all determinations and judgments in this action concerning the Settlement, whether favorable or unfavorable to the Class.

10. The Final Approval Hearing is set for Thursday, October 19, 2023, at 10 a.m. before the undersigned and will be conducted by videoconference. The motion in support of final approval of the Settlement shall be filed and served no later than fourteen (14) days prior to the Final Approval Hearing and any responsive papers shall be filed and served no later than seven (7) days prior to the Final Approval Hearing.

11. Class Counsel's motion for attorneys' fees and expenses and/or incentive awards shall be filed and served no later than thirty-five (35) days prior to the Final Approval Hearing.

///

15

12.  The Court reserves the right to continue the date of the Final Approval Hearing without further notice to the Class Members and retains jurisdiction to consider all further applications arising out of or connected with the Settlement.  The Court may approve the Settlement with such modifications as may be agreed to by the parties, if appropriate, without further notice to the Classes.

IT IS SO ORDERED.

Dated:  May 26, 2023

MORRISON C. ENGLAND, JR.
SENIOR UNITED STATES DISTRICT JUDGE