Thomas A. Saenz (Cal. Bar No. 159430)
Luis L. Lozada (Cal. Bar No. 344357)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
            llozada@maldef.org

*Attorneys for Plaintiffs
and the Proposed Class*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| MARIELA AGUILAR VELAZQUEZ, an individual, and RONEY EDLER BARROSO DA SILVA, an individual, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>       vs.<br><br>ALLY BANK,<br><br>                              Defendant. | Case No.: 2:21-cv-02375-MCE-DB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Judge: Morrison C. England, Jr.<br>Hearing Date: October 19, 2023<br>Hearing Time: 10:00 a.m.<br>Courtroom: 7, 14th floor |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 19, 2023 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7 on the 14th floor of this Court's Robert T. Matsui United States Courthouse, located at 501 I Street in Sacramento, California, Plaintiffs Mariela Aguilar Velazquez and Roney Edler Barroso da Silva, individually and as class representatives on behalf of the Class, will and hereby move this Court for an order: (1) granting, under Rule 23(e) of the Federal Rules of Civil Procedure, final approval of the Parties' proposed class-action settlement (the "Settlement"), and entry of judgment in accordance with the Settlement; and (2) granting, under Rule 23(a) and 23(b)(3), final class certification of the Settlement Class preliminarily certified in the Court's May 26, 2023 Preliminary Approval Order.  Dkt. 47.

Plaintiffs make this motion on the grounds that the Settlement is fair, adequate, and reasonable, was achieved through good faith, arms-length negotiations under the supervision of Magistrate Judge Carolyn K. Delaney, and has drawn a highly favorable response from the Class, as described in the attached memorandum.  The Settlement Agreement provides two important forms of relief for Class Members: (1) programmatic relief where Ally Bank has changed its banking policies to allow individuals who have a valid social security number or individual taxpayer identification number and reside in the United States to be evaluated for banking products and services on the same terms as U.S. citizen applicants; and (2) a Settlement Fund of up to $325,000 to compensate Class Members who submit Verified Claims.

This Motion is noticed to be heard with Plaintiffs' previously filed Unopposed Motion for Approval of Attorneys' Fees, Costs, and Service Awards.  Dkt. 48.  The Court preliminarily approved the Settlement Agreement on May 26, 2023.  Dkt. 47.  Since then, Notice was provided to the Class Members.  No Class Members have opted-out of the settlement, and no Class Members have objected.

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**          CASE NO. 2:21-CV-02375-MCE-DB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     This Motion is based on this notice of motion; the memorandum in support of the unopposed motion; the Amended Declaration of Thomas A. Saenz ("Saenz Decl."); Declaration of Luis L. Lozada ("Lozada Decl."); the Declaration of Navid Zivari for Angeion Group ("Angeion Decl."); the Court's record of this action; all matters of which the Court may take notice; and any oral evidence presented at the final approval hearing on the motion.


Dated: October 4, 2023

Respectfully submitted,

*/s/ Luis L. Lozada*
Luis L. Lozada
Thomas A. Saenz
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
       llozada@maldef.org

*Attorneys for Plaintiffs*
*and the Proposed Class*

## **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION…………………………………………………….……………..1-2

II.    RELEVANT BACKGROUND………………………………………………………..2-7

    A.  Settlement Negotiations and Preliminary Approval………………………………..…3

    B.  Settlement Overview…………………………………………………………………4-5

        *1. Programmatic Relief……………………………………………………………………4*

        *2. Monetary Relief……………………………………………………………………4-5*

    C.  The Settlement Class………………………………………………………………………5

    D.  Notice and Claims Process…………………………………………………………5-7

    E.  CAFA Notice Requirements Were Satisfied………………………………………7

III.    ARGUMENT…………………………………………………………………8-19

    A.  The Best Practicable Notice of Settlement Has Been Provided to the Class………...8-9

    B.  Final Certification of the Rule 23 Class is Proper………………………………………9

    C.  Final Approval of the Class Action Settlement Should Be Granted Because the
        Settlement is Fair, Adequate, and Reasonable Under Rule 23………………………9-19

        *1. Plaintiffs' Faced Substantial Obstacles to Recovery………………………………..11*

        *2. The Risk, Expense, Complexity, and Delay of Further Litigation Support Final*
        *Approval………………………………………………………………………11-12*

        *3. Plaintiffs Faced a Risk that the Court Would Deny Class Certification……………13*

        *4. The Settlement Amount is Appropriate…………………………………………..13-15*

        *5. The Extent of Discovery Supports Settlement………………………………………15*

        *6. Class Counsel's Experience and Views Support Approval…………………….......15-16*

        *7. Class Members Have Reacted Positively to the Settlement…………………….....16-17*

        *8. The Requirements for Approval under Rule 23(e)(2) Are Met…………………..17-19*

IV.    CONCLUSION……………………………………………………….……………........19

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT    CASE NO. 2:21-CV-02375-MCE-DB**

1

2

# **TABLE OF AUTHORITIES**

Cases                                                                                                         Page(s)

3

*Bert v. AK Steel Corp.*,
  2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ..................................................................18

4

*Betancourt v. Advantage Human Resourcing, Inc.*,
  2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ................................................................11, 14

5

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ...................................................................................15

6

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...........................................................................................8

7

*Chun-Hoon v. McKee Foods Corps.*,
  716 F.Supp.2d 848 (N.D. Cal. 2010) ................................................................................11

8

*Churchill Village, LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .............................................................................................8

9

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .....................................................................................10, 12

10

*Cotter v. Lyft, Inc.*,
  176 F.Supp.3d 930 (N.D. Cal. 2016) ...........................................................................11, 13

11

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ..........................................................................................................8

12

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) .........................................................................................16

13

14

*Fernandez v. Victoria Secret Store*, LLC,
  2008 WL 8150856 (C.D. Cal. July 21, 2008) ...................................................................18

15

*Ford v. CEC Entm't Inc.*,
  2015 WL 11439033 (S.D. Cal. Dec. 14, 2015) ...................................................................9

16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................................10, 11, 17

17

*In re Cendant Litig.*,
  264 F.3d 201 (3rd Cir. 2001) ............................................................................................12

18

*In re Lorazepam*,
  205 F.R.D. 369 (D.D.C. 2002) ..........................................................................................18

19

*In re Mego Fin. Corp.*,
  213 F.3d 454 (9th Cir. 2000) .......................................................................................12, 15

20

*In re Omnivision Techs., Inc.*,
  559 F.Supp.2d 1036 (N.D. Cal. 2008) ..............................................................................10

21

22

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ..............................................................................................16

23

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) .........................................................................................12

24

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ..........................................................................................15

25

*Lopez-Valenzuela v. Maricopa County*,
  2015 WL 12811366 (D. Ariz. June 25, 2015) ...................................................................18

26

27

28

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**          CASE NO. 2:21-CV-02375-MCE-DB

*Ma v. Covidien Holding, Inc.*,
   2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ........................................................14

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ..............................................................................8

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .......................................................2, 12, 16, 17

*Officers for Justices v. Civil Serv. Com'n of City & Cty. of S.F.*,
   668 F.2d 615 (9th Cir. 1982) ........................................................................13, 15

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...............................................................10, 15, 18

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ............................................................................11

*Schneider v. Chipotle Mexican Grill, Inc.*,
   2020 WL 6484833 (N.D. Cal. Nov. 4, 2020) ....................................................17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..............................................................................10

*Stovall-Gusman v. W.W. Granger, Inc.*,
   2015 WL 3776765 (N.D. Cal. June 17, 2015) ...................................................14

*Tumampos v. Cathay Pac. Airways LTD.*,
   2018 WL 5603702 (N.D. Cal. Sept. 21, 2018) ..................................................13

*United States v. Armour & Co.*,
   402 U.S. 673 (1971) ...........................................................................................14

*Valdez v. Neil Jones Food Co.*,
   2016 WL 4247911 (E.D. Cal. Aug. 10, 2016) ...................................................10

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ..........................................................................9, 12

*Victorino v. FCA US LLC*,
   2020 WL 5064295 (S.D. Cal. Aug. 27, 2020) .....................................................8

Statutes

28 U.S.C. § 1715 ........................................................................................................7

28 U.S.C. § 1715(d) ...................................................................................................7

42 U.S.C. § 1981 .................................................................................1,5, 12, 14, 19

Cal. Civ. Code § 52 ....................................................................................................1

Rules

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................8

Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi) ............................................................................8

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................8

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**    CASE NO. 2:21-CV-02375-MCE-DB

Fed. R. Civ. P. 23(e)(2)(A) ..............................................................................17

Fed. R. Civ. P. 23(e)(2)(B) ..............................................................................18

Fed. R. Civ. P. 23(e)(2)(c) ...............................................................................18

Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv) ....................................................................10

Rule 23 .................................................................................................................9

Rule 23(a) ............................................................................................................9

Rule 23(b)(3) ...................................................................................................8, 9

Rule 23(e)(2) ...............................................................................................10, 17

Rule 23(e)(3) ......................................................................................................10

Other Authorities

4 A. Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002) ...............10

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**    CASE NO. 2:21-CV-02375-MCE-DB

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL**

## I.     INTRODUCTION

Plaintiffs Mariela Aguilar Velazquez and Roney Edler Barroso da Silva, individually and as class representatives on behalf of the Class (together, "Plaintiffs"), respectfully request final approval of this Settlement of the claims brought against Defendant Ally Bank by a class of individuals who are not U.S. citizens or lawful permanent residents, and therefore, were previously ineligible to open or be added to a checking or savings account from Ally Bank because they could not establish proof of U.S. permanent residence.  Plaintiffs' Amended Complaint alleges that Class Members submitted applications for and were denied access to checking and savings products by Ally Bank on the basis of their alienage or immigration status, in violation of 42 U.S.C. § 1981 ("Section 1981") and the California Unruh Act, Cal. Civ. Code § 52.  Dkt. 45.  Plaintiffs filed this case so that they and others similarly situated would have the opportunity to apply and be considered for banking products and services with Ally Bank on the basis of their credit worthiness and not their citizenship or immigrant status.

This Settlement for which Plaintiffs respectfully seek final approval addresses the precise policy underlying Plaintiffs' claims of discrimination.  Ally Bank has agreed to change its banking policies to make banking products and services available to individuals with a valid social security number or individual taxpayer identification number and who reside in the U.S. on the same terms and conditions as those offered to U.S. citizens, fully eliminating the harm challenged by the lawsuit for future applicants.  The Settlement also provides for monetary relief in the form of a Settlement Fund in the amount of up to $325,000 for Class Members; $60,000 in attorneys' fees and costs; up to $25,000 in administration costs; and $3,000 in service awards for each of the two class representatives.  *See* Dkt. 46-1, Amended Settlement Agreement ("SA") ¶¶ 3.3.1, 3.3.2, 15.1, 15.2.

- 1 -

1
2
3
4
5

The Settlement, which the Court preliminarily approved on May 26, 2023, was reached after one year of extensive negotiation, and has received a positive response from the Class. Members of the California Class submitted 109 Verified Claims and members of the National Class submitted 272 Verified Claims during the claims period.  Angeion Decl. ¶ 13.  No Class Members have submitted an exclusion or objection.  *Id.* at ¶¶ 14, 15.

6
7
8
9
10
11
12
13
14
15
16
17

Final approval of this Settlement should be granted because the Settlement provides monetary relief to Class Members and is the product of diligent efforts of Class Counsel to obtain the best possible result for the Class.  The Settlement is fair, adequate, and reasonable, and provides excellent relief to the Class.  It is also significant that there are no objections to the settlement.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").  Therefore, Plaintiffs respectfully request that the Court confirm as final the certification of the Class, and enter an order granting final approval of the Settlement; award of attorneys' fees and costs; settlement administration costs; and incentive awards.

18

## II.    RELEVANT BACKGROUND

19
20
21
22
23
24

As described in Plaintiffs Unopposed Motion for Preliminary Settlement Approval [dkt. 35], and Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Awards [dkt. 48], Class counsel has dedicated time and resources to this contested litigation and engaged in good faith, arms-length settlement negotiations, resulting in significant relief to the Class.[1]  *See* Dkt. 46, Amended Declaration of Thomas A. Saenz ("Saenz Decl.") ¶¶ 9–21; Dkt. 48, Declaration of Luis

25
26
27
28

[1] A full discussion of the relevant factual and procedural background is set forth in Plaintiffs' Unopposed Motion for Preliminary Approval [dkt. 35], and Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees, Costs, and Service Awards [dkt. 48].

- 2 -

L. Lozada ("Lozada Decl.") ¶¶ 7–20.  The Settlement achieved by Class Counsel is procedurally sound: (a) having been reached after more than a year of good faith, arms-length negotiation; (b) with no parallel litigation that could give rise to concerns regarding the settlement; and (c) after a settlement conference, overseen by Magistrate Judge Delaney, and followed by months of further negotiations between the Parties to finalize the Settlement Agreement, and request for attorneys' fees and costs.  Lozada Decl. ¶¶ 7–20.

### A.  Settlement Negotiations and Preliminary Approval

On January 12, 2023, the Parties participated in a settlement conference via video with Magistrate Judge Delaney, during which they reached a tentative agreement on the material terms of a settlement, and thereafter the Court vacated all dates and deadlines pending the motion for preliminary approval.  Dkt. 35.  Following the settlement conference, the Parties spent the next several months diligently negotiating the terms of the Settlement Agreement and accompanying notice documents.   Saenz Decl. ¶¶ 15–19; Lozada Decl. ¶¶ 13–14.   The Parties' settlement concerning the award of attorneys' fees and costs were negotiated separately from, and subsequent to, negotiating the relief for the Class, and will not be paid out of the Settlement Fund.   Saenz Decl. ¶¶ 44–45; Lozada Decl. ¶ 13.

To effectuate the Settlement, Class Counsel participated in selecting Angeion Group as settlement administrator.  Class Counsel then participated in drafting and filed the preliminary approval brief, and the accompanying notice documents: notice, claim forms and instructions, and official documentation request.  Dkts. 35-37.

Following the preliminary approval hearing and the Court's request for certain amended documents, on April 13, 2023, Class Counsel participated in revising and filed the amended documents.  Dkts. 45, 46.  The Court granted preliminary approval on May 26, 2023.  Dkt. 47.

- 3 -

### B. Settlement Overview

#### 1. Programmatic Relief

The most significant aspect of the Settlement that Plaintiffs were able to achieve is that Ally Bank has modified its checking and savings account criteria to make individuals with a valid social security number or individual taxpayer identification number and who reside in the U.S. eligible on the same terms as U.S. citizens (the "Programmatic Relief"). SA ¶ 3.2. By updating these requirements, this policy change eliminates the precise harm that Plaintiffs challenged through this suit. As a major online bank, particularly with respect to checking and savings accounts, Plaintiffs hope and expect that these changes will also have a positive impact on the consumer banking industry at large.

#### 2. Monetary Relief

In addition to Programmatic Relief, Ally Bank has agreed to create a Settlement Fund of up to $325,000 that will cover pro rata payments to (a) Verified Claims for each California and National Class Member; and (b) Incentive Awards of $3,000 each for Plaintiffs Aguilar and Barroso. SA ¶¶ 3.3.2, 5.2.4, 15.2. In addition to the Settlement Fund, Ally Bank has further agreed to pay $60,000 in Class Counsel's attorneys' fees and costs, $3,000 in incentive awards to each of the class representatives, and up to $25,000 in settlement administration expenses to Angeion Group. SA ¶¶ 15.1, 3.3

The plan of allocation fairly and adequately compensates Class Members. The deadline to submit a Claim Form was August 25, 2023 and, on September 8, 2023, Angeion sent a letter to certain potential Class Members whose Claim Forms could not initially be validated to provide additional documentation. Angeion Decl. ¶ 12. As of October 2, 2023, Angeion received 797 Claim Forms, 381 claims were approved, and 416 were denied based on, among other things, failure to provide a fully executed W-9, failure to provide documentation required to validate their

- 4 -

social security number or individual taxpayer identification number, failure to timely submit a claim, or duplicative claims. Angeion Decl. ¶¶ 12,13. California Class Members will receive approximately $2,386.20 per claim. *Id.* at ¶ 13. National Class Members will receive approximately $238.62 per claim reflecting their potential entitlement to compensatory or nominal damages available under Section 1981. *Id.* These payments are calculated as a pro rata share of the Settlement, with the California Class receiving three times the pro rata share of the National Class. SA ¶ 3.3.5.

**C. The Settlement Class**

On May 26, 2023, the Court preliminarily approved certification of two classes for settlement purposes only, defined as follows:

- "California Class" means those persons who applied for a checking or savings account with Ally between December 20, 2019 and May 26, 2023, resided in California at the time of the application, possessed a valid Social Security Number or Individual Taxpayer Identification Number at the time of the application, and were not permitted to open or be added to an Ally checking or savings account because they were not U.S. permanent residents.

- "National Class" means those persons who applied for a checking or savings account with Ally between December 20, 2017 and May 26, 2023, resided in the U.S. but outside of California possessed a valid SSN or ITIN at the time of the application, and were not permitted to open or be added to an Ally checking or savings account because they were not U.S. permanent residents.

SA ¶¶ 1.10.1, 1.10.2. Consistent with the Court's order granting preliminary certification, Plaintiffs seek final certification of a National Class and a California Class.

**D. Notice and Claims Process**

The Parties have followed the Court-approved notice plan, as set forth in the Settlement Agreement, and the Court's Preliminary Approval Order entered on May 26, 2023. SA ¶ 7; dkt. 47. On June 5, 2023, Ally Bank sent Angeion the Settlement Class List consisting of 4,743 transactional records. Angeion Decl. ¶ 6. Each transactional record contained, to the extent

1  reasonably available, each potential Class Member's name, address, phone number, application
2  date, decision date, sub-class, and tax ID number.  *Id.*  Angeion reviewed the records that were
3  provided and complied the Class Member database.  *Id.*

4  Beginning on June 26, 2023, Angeion mailed the Court-approved Notice Packet to all
5  4,743 potential Class Members via USPS first-class mail, postage prepaid.  Angeion Decl. ¶ 7.
6  The Notice Packet consisted of the Long Form Notice, Claim Form, and W-9 form.  *Id.*  Of these
7  mailed Notice Packets, 587 were returned as undeliverable without a forwarding address.  *Id.* at ¶
8  9.  Angeion performed a skip-trace and identified 394 updated addresses.  *Id.*  Angeion updated
9  
10  the Class Member database and re-mailed Notices to the 394 Class Member identified through
11  skip-tracing.  *Id.*  None of the 394 re-mailed Notices have been returned by USPS.  *Id.*  Over 95%
12  of potential Class Members received the Notice Packet.

13  Consistent with best practices, Angeion maintained a dual-language (English-Spanish)
14  website containing downloadable versions of the Claim Form, Long Form Notice, Opt-Out Form,
15  Settlement Agreement, Preliminary Approval Order, and other Settlement related documents, and
16  Spanish translations of these documents.  Angeion Decl. ¶ 10.  The website has a "Frequently
17  Asked Questions" page to address common questions about the settlement and "Contact Us" page
18  which provides the mailing address, phone number an email address to contact Angeion.  *Id.*
19  Further, the website contains an online portal where Class Members may submit a claim.  *Id.*  As
20  of October 2, 2023, there have been 1,223 unique visitors to the settlement website.  *Id.*  Angeion
21  also created a dual-language (English-Spanish) toll-free hotline to field questions from Class
22  Members through an interactive voice response system to provide responses to frequency asked
23  questions and to provide information about the Settlement.  Angeion Decl. ¶ 11.  Class Members
24  may leave a message for Angeion to call them back.  *Id.*
25  
26  

27  
28  - 6 -

1   Potential Class Members were able to submit the Claim Form by mail and through the settlement

2   website.  SA ¶ 5.2.  The deadline to postmark or submit a Claim Form was August 25, 2023.

3   Angeion Decl. ¶ 12.  Angeion sent a letter to 92 potential Class Members whose Claim Forms

4   could not initially be validated with the information provided and requested that the potential Class

5   Members provide additional documentation to validate their social security number or individual

6   taxpayer identification number; the postmark deadline to response to the letter was September 15,

7   2023 and later extended by agreement of the Parties to September 26, 2023.  *Id.*  As of October 2,

8   2023, Angeion received 797 Claim Forms, which 381 were approved (109 Verified California

9   Class Claims and 272 Verified National Class).  *Id.* at ¶ 13.  Of the 416 denied Claim Forms, 290

10  were denied for failing to provide a fully executed W-9, 84 were denied for failing to provide

11  documentation required to validate their social security number or individual taxpayer

12  identification number, 6 were denied for submitting a claim past the deadline, 1 was denied for

13  being a non-class member, and 35 were duplicative claims.  *Id.*  The deadline for Class Members

14  to opt-out or object to the Settlement was August 10, 2023.  Angeion Decl. ¶ 14, 15.  No Class

15  Members have opted-out of or objected to the Settlement.  *Id.*  Angeion will send payments to all

16  Verified Claimants within 30 days after the Effective Date.  SA ¶ 5.2.4.

17

18

19      **E.  CAFA Notice Requirements Were Satisfied**

20      In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, Angeion

21  served CAFA notices on the relevant federal and state attorney's generals on March 23, 2023.

22  Angeion Decl. ¶ 4.  Angeion later served supplemental CAFA notices regarding the amended

23  settlement agreement on May 8, 2023.  *Id.* at ¶ 5. The Final Approval Hearing, set for October 19,

24  2023 is being held more than 90 days after the issuance of the CAFA notice, such that the final

25  approval order may be entered in accordance with CAFA's notice requirements if the Court finds

26  that all other requirements are met.  28 U.S.C. § 1715(d).

27

28

- 7 -

### III.    ARGUMENT

#### A.  The Best Practicable Notice of Settlement Has Been Provided to the Class

The notice here was the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and was provided "in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted).  Notice mailed to each class member "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 157 (1974).  "'[T]he rule does not insist on actual notice to all class members in all cases' and 'recognizes it might be impossible to identify some class members for purposes of actual notice.'"  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015)). For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion," stating "the time and manner for requesting exclusion."  Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).

As described above, the mailing of Notices to Class Members and the administration of the notice process ensured that the best notice practicable was provided to Class Members.  Although the Notice List was over-inclusive, courts widely recognize that notice mailed to "a broader group than the class definition" meets the definition of the best notice practicable under the circumstances "as long as there is some link or connection between the method of class notice and the class definition."  *Victorino v. FCA US LLC*, No. 16-CV-1617, 2020 WL 5064295, at *2 (S.D. Cal. Aug. 27, 2020) (collecting cases).  Here, the Notice List was developed from a database of all Ally Bank applicants to the checking and savings products at issue who were denied based on their non-U.S.

permanent resident status. *See* Angeion Decl. ¶ 6. The Notice was easily understandable and available in English and Spanish, and included contact information to Class Counsel, the address for the settlement administration website, and instruction on how to access the case docket. *Id.*

The Parties and the Settlement Administrator have complied with the Court-approved notice plan, as set forth in the Settlement Agreement, and the Court's Preliminary Approval Order. SA ¶ 7; Dkt. 47. Because Class Members have been given a full and fair opportunity to consider the terms of the proposed Settlement and make an informed decision on whether to participate, the Court should find that the notice was adequate and the best practicable. *See Ford v. CEC Entm't Inc.*, No. 14-CV-677, 2015 WL 11439033, at *3 (S.D. Cal. Dec. 14, 2015) (finding notice standards satisfied when claims administrator provided notice in accordance with the procedures previously approved by the court in its preliminary approval order).

**B.  Final Certification of the Rule 23 Class is Proper**

At the preliminary approval stage, the Court preliminarily certified the California Class and the National Class under Rule 23(a) and 23(b)(3). Dkt. 47. The Court also preliminarily appointed Plaintiffs Aguilar and Barroso as Class Representatives, and preliminarily appointed Plaintiffs' counsel, MALDEF, as Class Counsel. *Id.* at 13–16.

For the reasons outlined – in Plaintiffs' Unopposed Motion for Preliminary Approval, and the Court's Preliminary Approval Order – the Class, Class Representatives, and Class Counsel satisfy the requirements under Rule 23 for settlement purposes. Dkts. 35, 47. The Court's preliminary certification decision should now be confirmed as final.

**C.  Final Approval of the Class Action Settlement Should Be Granted Because the Settlement is Fair, Adequate, and Reasonable Under Rule 23**

At the outset, public policy strongly favors the resolution of litigation through settlement. This is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950

- 9 -

1    (9th Cir. 1976) (footnote omitted); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

2    (9th Cir. 1992) (the Ninth Circuit has a "strong judicial policy that favors settlement, particularly

3    where complex class action litigation is concerned"); *In re Omnivision Techs., Inc.*, 559 F.Supp.2d

4    1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy

5    favoring settlement, particularly in class action law suits.").  Indeed, "[i]n most situations, unless

6    the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

7    expensive litigation with uncertain results."  *Valdez v. Neil Jones Food Co.*, No. 1:13-cv-00519,

8    2016 WL 4247911, at *7 (E.D. Cal. Aug. 10, 2016) (quoting 4 A. Conte & H. Newberg, Newberg

9    on Class Actions, § 11:50 at 155 (4th ed. 2002)).

10

11            The touchstone for the final approval inquiry is whether the settlement is "fair, adequate

12   and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual

13   components parts, that must be examined for overall fairness."  *Staton v. Boeing Co.*, 327 F.3d

14   938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)

15   (internal quotation marks and alternations omitted)).  Under Rule 23(e)(2), a court must consider

16   "(A) the class representatives and class counsel have adequately represented the class; (B) the

17   proposal was negotiated at arms' length; (C) the relief provided for the class is adequate … [and]

18   (D) the proposal treats class members equitably to each other."  In analyzing whether class relief

19   is adequate, courts must consider the costs, risks, and delay of trial and appeal; the method of

20   processing class member claims and distributing relief; the terms of any attorneys' fee awards; and

21   any agreement made in connection with the settlement proposal.  Fed. R. Civ. P. 23(e)(2)(C)(i)-

22   (iv); 23(e)(3).

23

24            This standard overlaps with the requirements set forth in *Hanlon v. Chrysler Corp.* where

25   courts balance the following factors in assessing a class action settlement proposal:

26

27

28                                                  - 10 -

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (same). The inquiry required upon settlement is "heightened" where a case is settled prior to formal class certification. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019). Here, a rigorous review of the Settlement confirm that it merits final approval, as evidenced by a consideration of the factors set forth in *Hanlon*.

### 1. Plaintiffs' Faced Substantial Obstacles to Recovery

The Parties balanced "plaintiffs' expected recovery […] against the value of the settlement offer," taking into account "the relative strengths and weaknesses of the plaintiffs' case." *Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930, 935 (N.D. Cal. 2016) (internal citation and quotation marks omitted). "Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-cv-01788, 2016 WL 344532, at *4 (N.D. Cal. Jan. 28, 2016) (quoting *Chun-Hoon v. McKee Foods Corps.*, 716 F.Supp.2d 848, 851 (N.D. Cal. 2010)).

Here, while Plaintiffs believe that they can prevail on all issues, to recover full damages and relief, they would have to certify a class, survive Ally Bank's anticipated motion to dismiss, and prevail at trial. The risk here is significant because Plaintiffs' claims raised a relatively novel theory with numerous unsettled issues. In addition, Ally Bank may argue that it did not have a uniform policy of denying checking and savings account to DACA recipients and immigrants, argue that many members of the putative class may have been ineligible for checking or savings account for reasons other than citizenship or immigration status, or argue that its banking policies

are justified because of applicants' non-permanent U.S. resident status.  Further, Section 1981 does not have a provision for statutory damages.  As a result, at trial, the National Class stood to achieve only injunctive and equitable relief in the form of nominal damages.  In light of these obstacles, the Settlement offers excellent value to Class Members.

### 2.  The Risk, Expense, Complexity, and Delay of Further Litigation Support Final Approval

The risk, expense, complexity and duration of continued litigation favor settlement.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  Courts consider "the probable costs, in both time and money, of continued litigation."  *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002) (quoting *In re Cendant Litig.*, 264 F.3d 201, 233 (3rd Cir. 2001)).  In most cases, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *DIRECTV*, 221 F.R.D. at 526.  The Ninth Circuit has made clear that settlement is encouraged in class actions where possible: "there is an overriding public interest in settling and quieting litigation […] particularly […] in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense."  *Van Bronkhorst*, 529 F.2d at 950.

Here, absent settlement, final resolution of this case would not occur until years in the future, and would require significant expenditure of resources.  Settlement saves Class Members from the significant risk of no recovery, the cost of individual litigation, and the delay inherent in further litigation and possible appeals.  Plaintiffs' claims in this action are highly complex, both procedurally and substantively.  Settling Class Members' claims saves the Parties from completing briefing on class certification and motion practice, as well as going to trial.  For these reasons, the law favors settlements, especially when complex class litigation is concerned.  *See Class Plaintiffs*,

- 12 -

955 F.2d at 1276 (describing the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."). This principle is particularly true, where, as here, Plaintiffs' claims present "novel legal questions." *Tumampos v. Cathay Pac. Airways LTD.*, No. 16-CV-06208, 2018 WL 5603702, at *5 (N.D. Cal. Sept. 21, 2018). As such, litigation of Plaintiffs' claims would come with substantial risks involving certification issues, liability, prevailing at trial, and collecting any significant recovery.

### 3. *Plaintiffs Faced a Risk that the Court Would Deny Class Certification*

As noted above, Plaintiffs would have risked an adverse decision had this action proceeded to the class certification stage. Although Plaintiffs believe that this case is well-suited for resolution on a class-wide basis because it involves Ally Bank's uniform policy of requiring proof of U.S. permanent residence, Ally Bank may have argued that individual issues predominate over questions that are common to the class, and that the ability to make exceptions to its uniform policy defeated commonality. Further, Ally Bank may argue that Class Members' claims cannot be tried collectively based on individualized differences in their applications to prevent a finding of predominance.

### 4. *The Settlement Amount is Appropriate*

"[P]erhaps the most important factor" courts consider in determining whether to grant preliminary approval is "plaintiffs' expected recovery balanced against the value of the settlement offer." *Cotter*, 176 F.Supp.3d at 935 (internal quotation marks omitted). The settlement amount, as with any settlement, represents a compromise between receiving full damages and other relief on the one hand, and total defeat on the other. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justices v. Civil Serv. Com'n of City & Cty. of S.F.*, 668 F.2d 615, 624 (9th Cir. 1982) (quoting

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**    CASE NO. 2:21-CV-02375-MCE-DB

*United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971)). Given the risks and complexity of this litigation, and the cost savings obtained through settlement, the settlement amount is fair and adequate. The monetary and programmatic relief provides excellent value for Class Members.

California Class Members will receive approximately $2,386.20 per denied application, which amounts to over 55% of the $4,000 statutory damages available under the Unruh Act for each discriminatory act. *See* Angeion Decl. ¶ 13; Cal. Civil Code § 52(a). This is an excellent result for California Class Members. In light of the risks of an adverse judgement on the merits, class certification or appeal, even lesser payments would provide an excellent value to California Class Members.

National class Members will receive approximately $238.62 per denied application, which constitutes an excellent recovery considering the challenges inherent in establishing Section 1981 liability. *See* Angeion Decl. ¶ 13. Given the risks on class certification and the merits, even lower payments would constitute an excellent recovery for National Class Members.

As noted above, the Settlement provides Class Members who submit a Verified Claim with a substantial portion of their maximum possible recovery, along with programmatic relief that effectively eliminates the harm that Plaintiffs alleged. The financial compensation to Class Members of a substantial portion of the potential recovery at trial constitutes an exceptional result that supports approving the Settlement. *See Betancourt*, 2016 WL 344532, at *5 (granting final approval of settlement providing approximately 9.7% of total maximum potential recovery if class members had prevailed on all claims); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (finding that a settlement constituting 7.3% of plaintiff's estimated trial award to be "within the range of reasonableness") (quoting *Ma v. Covidien Holding, Inc.*, No. 12-02161, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014)).

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**          CASE NO. 2:21-CV-02375-MCE-DB

Plaintiffs also obtained the maximum degree of programmatic relief that Class Members could possibly obtain, which entirely eliminates the harm Plaintiffs allege. Ally Bank has agreed to make a wide variety of checking and savings accounts available to individuals with valid social security numbers and individual taxpayer identification numbers and who reside in the U.S. on the same terms as U.S. citizens.

Immigrants nationwide – not just Class Members – will potentially benefit from this programmatic relief, enabling hundreds of thousands of individuals to obtain checking and savings accounts with Ally Bank. The Settlement represents an excellent result, as even "a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair […] where monetary relief is but one form of the relief requested by the plaintiffs." *Officers for Justice*, 688 F.2d at 628. Accordingly, the Settlement amount and programmatic relief strongly favors granting final approval.

### 5. The Extent of Discovery Supports Settlement

A settlement requires adequate discovery. The touchstone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery. *In re Mego*, 213 F.3d at 459 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Here, Plaintiffs have pursued these claims diligently for over a year, conducting informal and confirmatory discovery along the way. The proceedings reached a stage where Plaintiffs and Class Counsel could make an intelligent evaluation of the litigation risks and benefits of settlement. Therefore, the settlement results from Class Counsel's informed judgment about the strengths and weaknesses of the claims.

### 6. Class Counsel's Experience and Views Support Approval

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). "Great weight

- 15 -

is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *See DIRECTV*, 221 F.R.D. at 528 (citation and internal quotation marks omitted). "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

Here, Class Counsel endorse the Settlement as fair, adequate, and reasonable. Class Counsel is experienced and capable of handling complex federal civil ligation, with extensive experience in prosecuting and litigating civil rights actions. Saenz Decl. ¶ 4. Based on their experience and weighing all of the above factors, Class Counsel concluded that the settlement is a favorable result that is in the best interest of the Class.

### 7. *Class Members Have Reacted Positively to the Settlement*

Class members in this case have reacted very positively to the Settlement. Ally Bank initially identified an estimated 4,410 Class Members. *See* Lozada Decl. ¶ 19. Ally Bank then sent a Settlement Class List consisting of 4,743 transactional records to Angeion. Angeion Decl. ¶ 6. Approximately 797 Class Members submitted Claim Forms, which is approximately 18% of the estimated class size. *Id. at.* ¶ 13. This response is slightly above the range of 5% - 15% Claim Form response rate that Plaintiffs estimated for the National Class and California Class.

As such, the response rate in this case is comparable to or greater than the claims rate in other consumer settlements. *See Donnenfeld v. Petro, Inc.*, No. 17-cv-2310 (E.D.N.Y. 2020) (8.6% of class members filed claims); *In re MyFord Touch Consumer Litig.*, No. 13-cv-3072 (N.D. Cal. 2019) (claims submitted on behalf of 4.5% of class); *Edwards v. Hearst Communications*,

- 16 -

No. 15-cv-9279 (S.D.N.Y. 2019) (7% of class members filed claims); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200, 2020 WL 6484833, at *9 (N.D. Cal. Nov. 4, 2020) (a "0.83% claims rate […] is on par with other consumer cases.").

No Class Members have opted-out of the Settlement, and none have objected to any part of the Settlement, including the overall monetary relief achieved and the amounts allocated to attorneys' fees and costs, and service awards.  Lozada Decl. ¶ 20.  The lack of objections and opt-outs is a strong positive reaction, favoring a finding that the settlement is fair and should be approved.  *See DIRECTV*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").  "Settlement is the offspring of compromise; the question [courts] address is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.  Here, "the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Id.* Accordingly, the Court should grant final approval.

### 8. *The Requirements for Approval under Rule 23(e)(2) Are Met*

As noted above, Rule 23(e)(2) specifies several requirements for approval of a class action settlement.  Each of these requirements is met here:

First, Class Representatives and Class Counsel must have adequately represented the Class. Fed. R. Civ. P. 23(e)(2)(A).  As set forth in greater detail in the Unopposed Motion for Preliminary Approval and Unopposed Motion for Fees and Costs, this requirement has been met.  *See* Dkts. 35, 48.  Class Representatives have the same interests as other Class Members, and have devoted significant time advocating on behalf of the Class.  *See* Dkt. 48 (motion for fees).  As noted above, Class Counsel are highly experienced and well-regarded in the field of class action civil rights

- 17 -

litigation.  *See* Lozada Decl. ¶ 5; *see also Lopez-Valenzuela v. Maricopa County*, No. 08-cv-00660, 2015 WL 12811366, at *3 (D. Ariz. June 25, 2015) (noting MALDEF's "special expertise and experience in the areas of civil rights and immigration law.").

Second, the Settlement was negotiated at arms-length.  Fed. R. Civ. P. 23(e)(2)(B).  A settlement reached "in good faith after a well-informed arms-length negotiation" is presumed to be fair.  *Fernandez v. Victoria Secret Store*, LLC, No. 06-cv-04149, 2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008); *In re Lorazepam*, 205 F.R.D. 369, 375–76 (D.D.C. 2002) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations.") (internal quotation marks omitted).  After the Parties reached an agreement in principle at the January 12, 2023 settlement conference, which was conducted under the supervision of Magistrate Judge Delaney, the Parties continued settlement discussions to finalize the Settlement Agreement.  Lozada Decl. ¶ 13.  Significantly, the Parties did not discuss attorneys' fees and costs until the substantive relief for the Class had been negotiated.  *See id.*  This is precisely the type of "an arms-length, non-collusive, negotiated resolution" in which Ninth Circuit courts place "a good deal of stock."  *Rodriguez*, 563 F.3d at 965; *see also Bert v. AK Steel Corp.*, No. 12-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("[P]articipation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties.").  Therefore, the Settlement Agreement is the result of arms-length negotiations between experienced Class Counsel and counsel for Ally Bank.  There is nothing in the negotiations or the substance of the Settlement Agreement to doubt its fairness.

Third, as discussed in greater detail above, the relief provided by the Settlement is adequate, particularly considering the untested nature of Plaintiffs' claims.  Fed. R. Civ. P. 23(e)(2)(C).  Settlement checks will be distributed to Class Members who submitted valid Claim

- 18 -

Forms within 30 days of the Effective Date once their claims are verified under the procedures set forth in the Settlement Agreement, and Class Members will have 120 days from the date of issuance to cash their checks.  SA ¶ 5.2.4.  Attorneys' fees and costs, as awarded by the Court, will be paid to the Settlement Administrator 21 days after the Effective Date or entry of an order approving the application for attorneys' fees (whichever is later), to be distributed to Class Counsel in accordance with the Settlement Agreement.  *Id.* at ¶ 15.1.2.

Fourth, the Settlement treats similarly-situated Class Members the same.  All California Class Members who submit Verified Claim Forms will receive approximately $2,386.20 for each application that Ally Bank denied.  Angeion Decl. ¶ 13.  All National Class Members who submit Verified Claim Forms will receive approximately $238.62 for each application that Ally Bank denied.  *Id.*  As described above, the difference in award amounts between the California Class and the National Class is justified by the difference in possible financial recovery for claims brought under the Unruh Act and claims brought under Section 1981.

## IV.     CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiffs' Unopposed Motion for Preliminary Approval and Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees, Costs, and Service Awards, Plaintiffs respectfully request that the Court grant Final Approval of the Settlement, grant final certification of the Class, designate Plaintiffs Aguilar and Barroso as Class Representatives, and confirm MALDEF as Class Counsel.

Dated: October 4, 2023                     Respectfully submitted,

*/s/ Luis L. Lozada*
Luis L. Lozada
Thomas A. Saenz
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND

*Attorneys for Plaintiffs and the Proposed Class*

- 19 -